UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF INSPECTOR GENERAL<br><br>    Defendant. | Civil Action No. 22-3186 (CJN) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

STANDARDS OF REVIEW .................................................................................................... 1

      I.     MOTION FOR SUMMARY JUDGMENT UNDER RULE 56 ............................ 1

      II.    SUMMARY JUDGMENT IN THE FOIA CONTEXT GENERALLY ................ 2

ARGUMENT ............................................................................................................................ 3

         1.     Exemption 5 ................................................................................................ 7

         2.     Exemptions 6 and 7(C) ............................................................................... 9

         3.     Exemption 7(E) ......................................................................................... 12

# **TABLE OF AUTHORITIES**

Cases

*Agrama v. IRS*,
   282 F. Supp. 3d 264 (D.D.C. 2017) ............................................................................................ 13
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................. 1, 2
*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) .................................................................................................. 10, 12
*Boyd v. Crim. Div. of Dep't of Just.*,
   475 F.3d 381 (D.C. Cir. 2007) ................................................................................................ 11, 14
*Budik v. Dep't of Army*,
   742 F. Supp. 2d 20 (D.D.C. 2010) ............................................................................................... 5
*Clemente v. FBI*,
   867 F.3d 111 (D.C. Cir. 2017) .................................................................................................... 3, 7
*Coleman v. Lappin*,
   607 F. Supp. 2d 15 (D.D.C. 2009) ............................................................................................ 9, 10
*Defenders of Wildlife v. Dep't of Interior*,
   314 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................................. 4
*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................................... 4
*Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) ................................................................................................... 2
*Greenberg v. Dep't of Treasury*,
   10 F. Supp. 2d 3 (D.D.C. 1998) ................................................................................................... 4
*Henderson v. Dep't of Just.*,
   157 F. Supp. 3d 42 (D.D.C. 2016) ............................................................................................ 9, 10
*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ..................................................................................................... 3
*Jud. Watch v. Dep't of Def.*
   19-1384 (DLF), 2021 WL 270503 (D.D.C. Jan. 27, 2021) ....................................................... 3, 8
*Jud. Watch v. Dep't of Navy*,
   25 F. Supp. 3d 131 (D.D.C. 2014) ............................................................................................... 10
*Jud. Watch, Inc. v. Rossotti*,
   285 F. Supp. 2d 17 (D.D.C. 2003) ............................................................................................... 4
*Kilmer v. Customs & Border Prot.*,
   Civ. A. No. 17-1566 (CKK), 2021 WL 1946392 (D.D.C. May 14, 2021) ................................. 7
*Kowalczyk v. Dep't of Just.*,
   73 F.3d 386 (D.C. Cir. 1996) ....................................................................................................... 4
*Loving v. Dep't of*,
   *Def.*, 550 F.3d 32 (D.C. Cir. 2008)............................................................................................... 7
*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ................................................................................................... 2, 8
*Marks v. Dep't of Justice*,
   578 F.2d 261 (9th Cir. 1978)........................................................................................................ 4


*Mead Data Cent., Inc. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ................................................................................. 14
*Myrick v. Johnson*,
  199 F. Supp. 3d 120 (D.D.C. 2016) ................................................................... 12, 13
*Nat'l Ass'n of Home Builders v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) .................................................................................. 10
*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) .............................................................................. 3, 4, 5
*SafeCard Servs.*, Inc. v. SEC
  926 F.2d 1197 (D.C. Cir. 1991) ................................................................................ 3
*Summers v. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998) .............................................................................. 14
*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) ............................................................................... 3, 7
*Ullah v. CIA*,
  435 F. Supp. 3d 177 (D.D.C. 2020) .......................................................................... 2
*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .................................................................................. 3

Statutes

5 U.S.C. § 552(b)(7)(E) .................................................................................................. 12
5 U.S.C. § 552(b) ........................................................................................................ 2, 13
5 U.S.C. § 552(b)(5) ......................................................................................................... 7
5 U.S.C. § 552(b)(6) ......................................................................................................... 9
5 U.S.C. § 552(b)(7)(C) ................................................................................................. 10

Rules

Federal Rule of Civil Procedure 56(a) ............................................................................. 1
Federal Rule of Civil Procedure 56 ................................................................................. 1

## INTRODUCTION

This case arises from a Freedom of Information Act ("FOIA") request that Plaintiff, Heritage Foundation, made to Defendant, U.S. Department of Homeland Security, Office of the Inspector General ("the Agency"). On July 22, 2022, Plaintiffs submitted a FOIA request to the Agency seeking records relating to "allegations made against or about United States Customs and Border Protection agents 'whipping' or otherwise engaging migrants attempting to cross into the United States in or near the Rio Grande River near Del Rio, Texas during the migrants' encounter with CB agents on September 19, 2021 and any governmental response and investigation thereto including any subsequent official proceeding arising therefrom." *See* Declaration of Okechi Chigewe ("Chigewe Decl.") ¶¶ 7, 24. Defendant now moves for summary judgment with respect to their search, withholdings, and segregability determinations. As discussed below, Defendant completed an adequate search for records responsive to Plaintiff's FOIA request, properly invoked exemptions for its withholdings, properly assessed segregability, and released all non-exempt responsive records. Accordingly, the Court should grant judgment in Defendant's favor.

## BACKGROUND

Defendant incorporates herein the attached Defendant's Statement of Material Facts and the accompanying Chigewe Declaration and *Vaughn* index.

## STANDARDS OF REVIEW

**I.    MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**

Under Federal Rule of Civil Procedure 56, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## II.     SUMMARY JUDGMENT IN THE FOIA CONTEXT GENERALLY

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Ullah v. CIA*, 435 F. Supp. 3d 177, 181 (D.D.C. 2020) (internal quotation marks omitted). "[T]he agency bears the ultimate burden of proof to demonstrate . . . that it properly withheld any records." *Id.*

"To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). "The agency may carry [the burden of establishing that a claimed exemption applies] by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is 'no fixed rule' establishing what such an affidavit must look like[.]" *Id.* (citation omitted).

Finally, "FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Machado Amadis*, 971 F.3d at 371 (quoting 5 U.S.C. § 552(b)). "[The D.C. Circuit has] held that district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'" *Id.* "An agency may satisfy [its segregability] obligation by '(1) providing a

*Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.'" *Jud. Watch v. Dep't of Def.*, No. 19-1384 (DLF), 2021 WL 270503, at *6 (D.D.C. Jan. 27, 2021). "The segregability requirement does not apply to non-exempt material that is 'inextricably intertwined' with exempt material, and agencies are entitled to a presumption that they disclosed all reasonably segregable material[.]" *Id.* (citation omitted).

## ARGUMENT

As discussed below, the Court should grant judgment in the Agency's favor because it completed an adequate search pursuant to Plaintiff's FOIA request, properly invoked exemptions for its withholdings, properly assessed segregability, and released all non-exempt responsive records.

### I. THE AGENCY CONDUCTED AN ADEQUEATE SEARCH FOR RESPONSIVE RECORDS

The Agency fulfilled its obligation to search for records responsive to Plaintiff's FOIA request. An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ; *see also Iturralde v.*

3

*Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby*, 920 F.2d at 68.

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Applying these principles, the Agency is entitled to summary judgment with respect to the adequacy of its search.

Here, there is no genuine dispute that the Agency fulfilled its obligations under the FOIA and performed adequate searches for records responsive to Plaintiff's FOIA request. When the Agency receives a FOIA request, the Agency's FOIA Unit reviews it for compliance with the Department of Homeland Security's FOIA regulation, 6 C.F.R. § 5.3. Chigewe Decl. ¶ 13. If deemed compliant, the FOIA request is "entered into a database known as FOIAXpress and assigned a case tracking number and a FOIA processor." *Id*. ¶ 15. The FOIA processor then

4

reviews the FOIA request's description of the records being sought. *Id*. Based upon the FOIA processor's knowledge of the missions of the program offices attached to the Agency, the FOIA processor "identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches." *Id*.; *see also Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 30 (D.D.C. 2010) ("the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested") (quoting *Oglesby*, 920 F.2d at 68). After the receipt of any FOIA request, the designated point of contact ("POC") at each program office tasked with conducting the applicable search "forwards the request and instructions to the individual employee(s) within the program office that the POC believes is reasonably likely to have responsive records, if any." Chigewe Decl. ¶¶ 17. Subsequently, any responsive records retrieved by the program office(s) tasked with a search – along with a completed search form – are forwarded back to the FOIA processor. *Id*. ¶ 17. The FOIA processor then conducts a review of the collected records for responsiveness, application of appropriate FOIA exemptions, and the necessity of any referrals and/or consultations. *Id.*

Here, potentially responsive records were deemed likely to be located in a few different Agency offices. One of those offices is the Agency's Office of Legislative Affairs ("OLA"), which is housed within the Agency's Office of External Affairs; that office serves as the Agency's primary liaison to members of Congress and their staffs. *Id*. ¶ 23. Additionally, the Public Affairs branch within the office serves as the primary liaison to internal stakeholders, the media and the public. *Id*. Pursuant to the OLA's role in the Agency, it would have received all communications related to the events of September 19, 2021 that are referenced in Plaintiff's FOIA request. *Id.* at ¶ 24. OLA would have also provided any responses that may have issued from the Agency in

response to any communications related to the events of September 19, 2021 that are referenced in Plaintiff's FOIA request. *Id*. To gather responsive records, the OLA conducted searches of all databases and locations in which their records are stored and maintained, which included: "1) Outlook, 2) [the Agency's] shared drive, and 3) the SharePoint database." *Id*. ¶ 26. The following search terms were used to pull potentially responsive records: "'[w]hipping,' 'Haitian migrants,' 'Rio Grande River,' 'Del Rio', 'Haiti, and Horses." *Id*. In addition, OLA's e-mail inbox was searched to ensure that all communications from September 19, 2021 to the present were pulled. *Id*. ¶ 27. The following search terms were used: "Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian." *Id*.

Another office that was searched was the Office of Investigations ("OI") program office, which "conducts investigations into allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs. These investigations can result in criminal prosecutions, fines, civil monetary penalties, administrative sanctions, and personnel actions." *Id*. ¶ 31. Additionally, OI "provides oversight and monitors the investigative activity of DHS' various internal affairs offices." *Id*. Accordingly, to search for records potentially responsive to Plaintiff's FOIA request, OI conducted a search for records related to allegations of criminal misconduct by DHS employees. *Id*. ¶ 33. Specifically, based on Plaintiff's FOIA request, OI "initially searched for records located in the investigation's electronic case management system with the following parameters: 1) search keyword: whipping, 2) affected agency: CBP, BP, CBPOPR and, 3) record received date range: 8/1/2021 to 10/30/2021." *Id*. ¶ 34. Subsequently, OI "conducted a second search for all responsive complaints and investigations with the following

additional keywords: Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian." *Id*. ¶ 36.

Moreover, pursuant to discussions with Plaintiff aimed at resolving the instant litigation, OI conducted an additional search for contemporaneous documentation and records involving the Agency's leadership. *Id*. ¶ 39. Despite Plaintiff's suggestion that such a search should have yielded responsive records, no such records were located by OI. *Id*. Nevertheless, OI's additional search further confirms that the Agency's searches were adequate and reasonable. *Kilmer v. Customs & Border Prot.*, Civ. A. No. 17-1566 (CKK), 2021 WL 1946392, at *9 (D.D.C. May 14, 2021) (holding that the agency's search was reasonable when, among other things, it conducted "multiple searches of its relevant electronic databases," and "explained the scope and contents of the databases searched[.]").

As such, the Agency conducted a search "reasonably calculated" to locate the records responsive to Plaintiff's FOIA request. *Truitt*, 897 F.2d at 542. The Agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente*, 867 F.3d at 117. Accordingly, the Agency is entitled to summary judgment with respect to the adequacy of its search.

## II.  THE AGENCY PROPERLY WITHHELD CERTAIN MATERIALS WITHIN THE SUBJECT RECORDS

### 1. Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the

7

deliberative process privilege—and excludes these privileged documents from FOIA's reach." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

"To fall within the [deliberative process] privilege, a document must be predecisional and deliberative." *Machado Amadis*, 971 F.3d at 370. "Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process." *Id.* (internal quotation marks omitted). The deliberative process privilege "protects debate and candid consideration of alternatives within an agency, thus improving agency decisionmaking." *Id.* (internal quotation marks omitted). "The deliberative process privilege incorporated into FOIA Exemption 5 allows agencies to withhold 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Judicial Watch*, 2021 WL 270503, at *2.

Pursuant to Exemption 5, the Agency withheld certain information protected by the deliberative process privilege. Chigewe Decl ¶ 45. With regard to the deliberative process privilege, the Agency withheld in part e-mail communications between its employees. *Id*. ¶ 49. These e-mail communications "include, but are not limited to draft email language sent from a subordinate to a supervisor for clearance prior to transmission, comments and questions related to information contained within the email and opinions and beliefs of colleagues discussing specific investigations in response to questions posted by Congress. These communications were not finalized and w[ere] therefore pre-decisional." *Id.* Further, the contents of these communications are considered an integral part of the Agency's process in strategizing responses to Congress, the media, and the public. *Id*. Disclosure of this information foreseeable would harm the Agency's deliberative process and the quality of its decisions by having a chilling effect on communication

8

and the exchange of ideas among the Agency's employees. *Id.* Additional information about the Agency's withholdings based upon the deliberative process privilege and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying the Agency's declaration. *Vaughn* Index at 6-7.

For the reasons discussed herein and set forth in the Agency's declarations and *Vaughn* indices, the Court should conclude that the Agency appropriately withheld information under Exemption 5.

### 2. Exemptions 6 and 7(C)

FOIA Exemptions 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also Henderson v. Dep't of Just.*, 157 F. Supp. 3d 42, 50 (D.D.C. 2016) (same). "The Court's first task is to determine whether the responsive records are personal, medical or similar files." *Id.* "If so, the Court next determines whether disclosure of the third-party information 'would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* "This second inquiry requires [the Court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id.* (internal quotation marks omitted). "The only relevant public interest in this context harkens back to the principal purpose of the FOIA: to 'shed[ ] light on an agency's performance of its statutory duties[.]'" *Id.*

"Protection under Exemption 6 . . . 'cover[s] detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* "In other words, Exemption 6 is designed 'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information' maintained in government records, regardless of 'the label on the file[.]'" *Id.* (citation omitted).

9

"It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." *Coleman v. Lappin*, 607 F. Supp. 2d 15, 22 (D.D.C. 2009). "'[U]nless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.'" *Henderson*, 157 F. Supp. 3d at 51 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33-34 (D.C. Cir. 2002)). "Courts have held specifically that Exemption 6 covers 'such items as a person's name, address, place of birth, employment history, and telephone number[,]' notwithstanding the nature of the document or file within which this information appears." *Jud. Watch v. Dep't of Navy*, 25 F. Supp. 3d 131, 141 (D.D.C. 2014) (citation omitted); *see also Coleman*, 607 F. Supp. 2d at 22 (holding, in part, that individuals' Social Security numbers and dates of birth were properly withheld under Exemption 6).

Additionally, FOIA Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 160 (2004) (same). "As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011). "[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Id*. (internal quotation marks omitted). "[T]he Supreme Court has made clear that requests for such third-party information are strongly disfavored." *Id*. (internal quotation marks omitted). "That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution." *Id*.

"[T]o trigger the balancing of public interests against private interests," a FOIA requester must show (i) "'that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,'" and (ii) "'the information is likely to advance that interest.'" *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 172).

As a law enforcement agency, the Agency simultaneously asserted Exemption 6 and Exemption 7(C) to withhold portions of e-mail discussions between the Agency's employees as well as e-mail discussions with third parties, such as Congressional staff, relating to allegations of misconduct by DHS employees. Chigewe Decl. ¶ 53. The aforesaid information specifically withheld from these pages consists of personally identifiable information such as names of the Agency's employees, direct telephone numbers, and e-mail addresses. *Id*. The Agency also asserted Exemption 6 and 7(C) to withhold materials like investigative complaints and attachments documenting the Agency's investigative processes that may result in criminal prosecutions and/or administrative actions. *Id*. The information specifically withheld from these pages contains names and personally identifiable information of the Agency's subjects, witnesses, complainants, and third parties, and includes e-mail addresses, phone numbers, addresses, date of birth, and social security numbers. *Id*.

The Agency determined that the individuals whose information appears in these records have a substantial privacy interest that would be implicated by the public release of the law enforcement investigative materials. The Agency did not identify any public interest in the disclosure of the withheld information because that information would not shed light on the public's understanding of the affected agency's performance of its statutory duties. *Id* ¶ 54. The Agency further determined that the affected individuals' privacy interests outweighed any public

11

interest in disclosure. *Id*. Release of this information would constitute an invasion of the individuals' personal privacy. *Id*. The Agency further explains that release of this information would foreseeably would but complainants and/or witnesses in jeopardy of retaliation and would have a chilling effect on candid conversations with law enforcement personnel. *Id*. Additional information about the Agency's withholdings based upon the unwarranted invasion of these individuals' personal privacy and the foreseeable harm that would result from such disclosure is detailed in the *Vaughn* indices accompanying the Agency's declaration. *Vaughn* Index at 3-6.

For the reasons discussed herein and set forth in Defendant's declaration and *Vaughn* indices, the Court should conclude that Defendant appropriately withheld information under Exemptions 6 and 7(C).

### 3. Exemption 7(E)

Under Exemption 7(E), FOIA exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Under [D.C. Circuit] precedents, Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell*, 646 F.3d at 42. Exemption 7(E) "exempts from disclosure information that could increase the risks that a law will be violated or that past violators will escape legal consequences, not merely information that expressly instruct[s] [potential violators] how to break the law." *Myrick v. Johnson*, 199 F. Supp. 3d 120, 124 (D.D.C. 2016) (internal quotation

12

marks omitted). "Exemption 7(E) is properly invoked for information and techniques that are secret and 'not generally known to the public.'" *Id.*

The Agency is a law enforcement agency. Chigewe Decl. ¶ 53. Plaintiffs' FOIA requests sought law enforcement records. *Id.*

Pursuant to Exemption 7(E), the Agency withheld information such as non-public law enforcement e-mail addresses and web addresses, investigative documents labeled "For Official Use Only," and materials about law enforcement information technology systems. *Id.* ¶ 65. Release of this information foreseeably would cause harm by increasing the risk of unauthorized access to the Agency's systems and by increasing other security risks that would hinder the Agency's law enforcement investigations and mission. *Id.* ¶ 66. Additional information about the Agency's withholdings based upon its law enforcement techniques and processes and the foreseeable harm that would result from disclosure is detailed in the *Vaughn* indices accompanying the Agency's declaration. *Vaughn* Index at 7.

For the reasons discussed herein and set forth in the Agency's declaration and *Vaughn* indices, the Court should conclude that the Agency appropriately withheld information under Exemption 7(E).

## III.  THE AGENCY RELEASED ALL REASONABLY SEGREGABLE INFORMATION

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions."

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the documents withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd*, 475 F.3d at 391.

Here, the Agency carefully reviewed the responsive records on a line-by-line basis to identify both information exempt from disclosure as well as material for which a discretionary waiver of exemption could be applied. Chigewe Decl. ¶ 69. All information not exempt from disclosure pursuant to a FOIA exemptions was correctly segregated and released. *Id*. ¶ 70. The Agency did not withhold any non-exempt information on the basis that it was non-segregable. *Id*. ¶ 71. Any further release of information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. Accordingly, the Agency released all reasonably segregable potions of records responsive to Plaintiff's request, the release of which would not cause foreseeable harm.

For the reasons discussed herein and set forth in the Agency's declaration and *Vaughn* indices, the Court should conclude that the Agency satisfied its obligation to disclose any reasonably segregable information.

<center>* * *</center>

## CONCLUSION

For the foregoing reasons, the Court should grant the Agency's motion for summary judgment. A proposed order accompanies this submission.

Dated: July 7, 2023

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES, D.C. Bar #481052
                                                United States Attorney

                                                BRIAN P. HUDAK
                                                Chief, Civil Division

                                                By: /s/ *Fithawi Berhane*
                                                FITHAWI BERHANE
                                                Assistant United States Attorney
                                                United States Attorney's Office
                                                601 D Street, N.W.
                                                Washington, D.C. 20530
                                                (202) 252-6653
                                                Fithawi.Berhane@usdoj.gov

                                                *Counsel for Defendant*