UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL;<br><br>    Defendants. | Case No. 22-3186 (CJN) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendant, U.S. Department of Homeland Security, Office of Inspector General ("the Agency"), hereby submits this statement of material facts as to which there is no genuine dispute in support of their Motion for Summary Judgment ("Motion") in this Freedom of Information Act ("FOIA") case.

**I.    Plaintiff's FOIA Request**

1. On July 22, 2022, Plaintiff submitted a FOIA request via "DHS Portal." *See* Declaration of Okechi Chigewe ("Chigewe Decl.") ¶ 7.

2. The aforesaid FOIA request sought responsive records relating to "allegations made against or about United States Customs and Border Protection agents 'whipping' or otherwise engaging migrants attempting to cross into the United States in or near the Rio Grande River near Del Rio, Texas during the migrants' encounter with CB agents on September 19, 2021 and any governmental response and investigation thereto including any subsequent official proceeding arising therefrom." *Id*. ¶ 24.

3. Plaintiff's FOIA Request enumerated the types of records it sought as follows: "1. All records of DHS OIG's examination of the Incident, 2. All records relating to DHS OIG's examination of the Incident, 3. All records relating to United States Department of Homeland Security, U.S. Customs and Border Protection Office of Professional Responsibility ("CPB OPR"), Report of Investigation, No. 202112280 (Apr. 17, 2022) ("OPR Report"), 4. All records relating to the DHS OIG's declination to investigate the Incident, 5. All records relating to the declination by the Department of Justice to prosecute Border Patrol Agents for conduct during the Incident, 6. All communications with DHS (excluding DHS OIG) relating to the Incident, 7. All communications with the Department of Justice relating to the Incident, 8. All communication with Office of the President or Executive Office of the President relating to the Incident and, 9. All records notating, memorializing, or summarizing a communication, or a portion thereof, responsive to specifications." *Id*. at n.1

4. On July 22, 2022, an automated email was sent to Plaintiff acknowledging its FOIA Request. *Id*. ¶ 8.

5. Plaintiff's FOIA Request was assigned case number 2022-IGFO-00237. *Id*. ¶ 6.

II. **The Agency's Search for Responsive Records**

6. "When the DHS OIG receives a FOIA request, the FOIA Unit evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3." *Id*. ¶ 13.

7. "Perfected FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number and FOIA processor. Based upon the requestor's description of the records being sought and the FOIA Unit's knowledge of the various program offices' missions, the FOIA processor identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches." *Id*. ¶ 15.

8. "The program offices are typically staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the FOIA Unit. Each POC is a person with detailed knowledge about the operations of their particular program office." *Id*. ¶ 16.

9. The FOIA processor, after identifying the program office(s) likely to possess responsive records, provides a copy of the FOIA request, an email detailing the FOIA request, and "instructions to conduct a search for responsive records and a search form to document information such as search terms, databases searched, and any other program offices believed to have responsive records" to the POC of the program office(s) identified as likely to possess responsive records. *Id.* ¶¶ 15-17.

10. After review of the aforesaid materials, the recipient POC "forwards the request and instructions to the individual employee(s) within the program office that the POC believes is reasonably likely to have responsive records, if any. Once those searches are completed, the individual(s) and program offices provide any potentially responsive records along with a completed search form to the assigned FOIA processor." *Id*. ¶ 17 The FOIA processor then conducts a separate review of the collected records "for responsiveness, application of appropriate FOIA exemptions, and the necessity of any referrals and/or consultations." *Id*.

11. The Office of Legislative Affairs ("OLA"), which is housed within the Agency's Office of External Affairs, "supports DHS OIG's mission by providing relevant, accurate, and timely communications to DHS OIG's external stakeholders in Congress, the public, and the media. This office serves as the primary liaison to members of Congress and their staffs. The Public Affairs branch serves as the primary liaison to internal stakeholders, the media and the public." *Id*. ¶ 23.

12. "As all communications related to the events of September 19, 2021 described in Plaintiff's FOIA request would have been received by the [OLA] and any responses would have been released through their program office, a search tasking was sent on October 31, 2022" to the OLA. *Id*. ¶ 24.

13. To gather responsive records, the OLA searched all of the databases and locations in which their records are stored and maintained, which include the following locations: "1) Outlook, 2) DHS OIG's shared drive and 3) the SharePoint database." Further, the following search terms were used to pull potentially responsive records: "[w]hipping," "Haitian migrants," "Rio Grande River," "Del Rio," "Haiti," and "Horses." *Id*. ¶ 26.

14. In addition, the OLA's e-mail inbox was searched to ensure all relevant communications September 19, 2021 to present were pulled. *Id*. ¶ 27. The following search terms were utilized in the search of OLA's e-mail inbox: "Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian." *Id*.

15. The Agency's Office of Investigations ("OI") program office "conducts investigations into allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs. These investigations can result in criminal prosecutions, fines, civil monetary penalties, administrative sanctions, and personnel actions." *Id*. ¶ 31. Additionally, OI "provides oversight and monitors the investigative activity of DHS' various internal affairs offices." *Id*.

16. On October 31, 2022, based on the information sought in Plaintiff's FOIA request, the Agency tasked OI with conducting a search for records "related to allegations of criminal misconduct by DHS employees." *Id*. ¶ 33.

17. OI "initially searched for records located in the investigation's electronic case management system with the following parameters: 1) search keyword: whipping, 2) affected agency: CBP, BP, CBPOPR and, 3) record received date range: 8/1/2021 to 10/30/2021." *Id*. ¶ 34.

18. Subsequently, OI "conducted a second search for all responsive complaints and investigations with the following additional keywords: Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian." *Id*. ¶ 36.

19. Pursuant to discussions with Plaintiff aimed at resolving the instant litigation, OI conducted an additional search for contemporaneous documentation and records involving the Agency's leadership. *Id*. ¶ 39. Despite Plaintiff's apparent conviction that such a search should have yielded responsive records, no such records were located by OI. *Id*.

### III. Withholdings

#### A. Exemption 5

20. Pursuant to FOIA Exemption 5, the Agency withheld information pursuant to the deliberative process privilege. *Id*. ¶ 45.

21. With respect to the deliberative process privilege, the Agency withheld in part e-mail communications between its employees. *Id*. ¶ 49

22. The aforesaid e-mail communications "include, but are not limited to draft email language sent from a subordinate to a supervisor for clearance prior to transmission, comments and questions related to information contained within the email and opinions and beliefs of colleagues discussing specific investigations in response to questions posted by Congress. These communications were not finalized and was therefore pre-decisional." *Id*.

23. The contents of these communications are considered an integral part of the Agency's process in strategizing responses to Congress, the media and the public. *Id.*

24. Disclosure of the information contained in the aforesaid e-mails would cause harm to the Agency's deliberative process and the quality of its decisions by having a chilling effect on communication and the exchange of ideas among the Agency's employees. *Id.* ¶ 50.

**B.     Exemption 6**

25. Pursuant to FOIA Exemption 6, as well as Exemption 7(C), the Agency withheld in part records pertaining to e-mail discussions between the Agency's employees and e-mail discussions with third parties, such as Congressional staff, relating to allegations of misconduct by DHS employees. *Id.* ¶ 53.

26. The aforesaid information specifically withheld from these pages consist of personally identifiable information such as names of the Agency's employees, direct telephone numbers, and e-mail addresses. *Id.*

27. Pursuant to FOIA Exemption 6, as well as Exemption 7(C), the Agency withheld in part records that include investigative complaints and attachments documenting the Agency's investigative processes which may result in criminal prosecutions and/or administrative actions. *Id.*

28. The aforesaid information specifically withheld from these pages contain names and personally identifiable information of the Agency's subjects, witnesses, complainants, and third parties, such as e-mail addresses, phone numbers, addresses, date of birth, and social security numbers. *Id.*

**C.     Exemption 7**

29. The Agency is a law enforcement agency. *Id.*

30. Plaintiff's FOIA requests sought law enforcement records. *Id.*

   i. Exemption 7(C)

31. Pursuant to FOIA Exemption 7(C), as well as Exemption 6, the Agency withheld in part records pertaining to e-mail discussions between the Agency's employees and e-mail discussions with third parties, such as Congressional staff, relating to allegations of misconduct by DHS employees. *Id.*

32. The aforesaid information specifically withheld from these pages consist of personally identifiable information such as names of the Agency's employees, direct telephone numbers, and e-mail addresses. *Id.*

33. Pursuant to FOIA Exemption 7(C), as well as Exemption 6, the Agency withheld in part records that include investigative complaints and attachments documenting the Agency's investigative processes which may result in criminal prosecutions and/or administrative actions. *Id.* ¶ 53

34. The information specifically withheld from these pages contain names and personally identifiable information of the Agency's subjects, witnesses, complainants, and third parties, such as e-mail addresses, phone numbers, addresses, date of birth, and social security numbers. Id. ¶ 56.

   ii. Exemption 7(E)

35. Pursuant to FOIA Exemption 7(E), the Agency withheld, information such as non-public law enforcement e-mail addresses and web addresses, investigative documents labeled "For Official Use Only," and law enforcement information technology systems. *Id.* ¶ 65.

36. Release of this information would increase risk of unauthorized access to the Agency's systems and increase possible security risks, which would hinder the Agency's law enforcement investigations and mission. *Id*. ¶ 66.

IV. **Segregability**

37. The Agency carefully reviewed the responsive records on a line-by-line basis to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. *Id*. ¶ 69.

38. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA Exemptions specified above was correctly segregated and non-exempt portions were released. *Id*. ¶ 70.

39. The Agency did not withhold any non-exempt information on the grounds that it was non-segregable. *Id*. ¶ 71.

40. Any further release of information would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions. *Id*. ¶¶ 50, 59, 66.

Dated: June 7, 2023
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____/s/ Fithawi Berhane_____
FITHAWI BERHANE
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-6653
Fithawi.Berhane@usdoj.gov

*Counsel for the United States of America*