UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL;<br><br>    Defendants. | Case No. 1:22-cv-03186 |

### DECLARATION OF OKECHI CHIGEWE

**I.**  **INTRODUCTION**

I, Okechi Chigewe, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Freedom of Information Act ("FOIA") Officer and Supervisory Government Information Specialist for the FOIA Unit within the Information Law and Disclosure Division ("ILD") in the Office of Counsel at the United States Department of Homeland Security Office of Inspector General ("DHS OIG"), and I have served in this capacity since February 2022. I have over nine years of FOIA experience, which includes experience in managing FOIA programs at the United States Department of Transportation's Federal Railroad Administration, and United States Department of Labor's Wage and Hour Division.

2. As the Deputy FOIA Officer for the DHS OIG, I supervise four (4) Government Information Specialists, and one (1) Intake Specialist. I oversee the daily operation of FOIA processing from intake to closeout, make assessments of the agency's FOIA program and implement improvements, keep constant communication with agency leadership on our FOIA program and provide technical assistance to ensure agency compliance with the FOIA. As the

Deputy FOIA Officer, I assist ILD attorneys, who serve as agency counsel in the representation of DHS OIG in FOIA litigation, including document production.

3. DHS OIG's FOIA Unit is housed within ILD. The FOIA Unit is responsible for receiving, processing, and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received by DHS OIG.

4. My official duties and responsibilities related to the FOIA include the processing of FOIA and Privacy Act requests received by DHS OIG. As the Supervisory Government Information Specialist and DHS OIG Deputy FOIA Officer within ILD, I also approve search taskings to program offices and review all of the work completed by the division's Government Information Specialists ("GISs"). Due to my experience and the nature of my official duties, I am familiar with DHS OIG's procedures for searching and responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with DHS OIG's processing of the FOIA request dated July 22, 2022, filed by Plaintiff, which is a subject of this litigation.

5. The statements contained in this declaration are based upon my personal knowledge, my review of records kept by DHS OIG in the ordinary course of business, and information provided to me by other DHS OIG employees in the course of my official duties.

6. This declaration provides a description of DHS OIG's search and withholdings under the FOIA in response to Plaintiff's FOIA request 2022-IGFO-00237.

## II. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

7. On July 22, 2022, Plaintiff submitted, via DHS Portal, the FOIA request at issue in this litigation. The request was received on July 22, 2022, and assigned case number 2022-IGFO-00237.

8. On July 22, 2022, an automated email was sent via the DHS Portal acknowledging Plaintiff's FOIA request.

9. On October 19, 2022, Plaintiff filed the Complaint in this case alleging DHS OIG failed to respond to Plaintiff's FOIA request. DHS OIG filed its Answer on November 18, 2022.

10. Prior to filing its Answer, DHS OIG produced its final response to Plaintiff's FOIA request 2022-IGFO-00237 on November 17, 2022, providing 46 pages released in full and 56 pages released in part. DHS OIG also referred 16 pages to the U.S. Customs and Border Patrol ("CBP").

11. On February 24, 2023, DHS OIG produce a supplemental response of 14 additional pages of records, of which 1 page was released in part and 13 pages were released in full.

12. This declaration provides a description of DHS OIG's search in response to Plaintiff's FOIA request 2022-IGFO-00237 and provides the basis under which information has been withheld under the FOIA.

### III. DHS OIG'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

13. When the DHS OIG receives a FOIA request, the FOIA Unit evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it is made in writing, it reasonably describes the records sought, and the records are under the purview of DHS OIG.

14. Pursuant to 6 C.F.R. § 5.3(c), if a FOIA request does not reasonably describe the records sought or it is improperly submitted, the FOIA Unit may seek clarification from the requestor or administratively close the request. If the FOIA request seeks records under the purview of a government agency other than DHS or a component other than OIG, the FOIA unit

will refer the request to that government agency or component and inform the requestor to contact that agency or component directly and DHS OIG will administratively close the FOIA request.

15. Perfected FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number and FOIA processor. Based upon the requestor's description of the records being sought and the FOIA Unit's knowledge of the various program offices' missions, the FOIA processor identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

16. The program offices are typically staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the FOIA Unit. Each POC is a person with detailed knowledge about the operations of their particular program office.

17. The POC within each of those program offices is provided with a copy of the FOIA request, an email detailing the FOIA request, instructions to conduct a search for responsive records and a search form to document information such as search terms, databases searched and any other program offices believed to have responsive records. As the program offices are best positioned to determine where responsive records are located, they are responsible for searching all locations and by all keywords that the program office reasonably believes would produce responsive records. The POC then reviews the FOIA request, along with any case-specific instructions that may have been provided, and based on the POC's experience and knowledge of the program office's practices and activities, forwards the request and instructions to the individual employee(s) within the program office that the POC believes is reasonably likely to have responsive records, if any. Once those searches are completed, the individual(s) and program offices provide any potentially responsive records along with a completed search form to the assigned FOIA processor. The FOIA processor then reviews the collected records for

responsiveness, application of appropriate FOIA exemptions, and the necessity of any referrals and/or consultations.

18.   DHS OIG employees maintain records in several ways.  DHS OIG program offices use various systems to maintain records.  DHS OIG employees may store electronic records on their individual computer hard drives, their program office's shared drive, databases, DVDs, CDs, and/or USB storage devices.  The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which employees maintain their files.

19.   DHS OIG employees may also maintain hard copies of records, such as investigation files, which may be stored and maintained with an employee's office and/or the DHS OIG Sensitive Compartmented Information Facility ("SCIF"), depending on whether the records are classified.

20.   Additionally, all DHS OIG employees have access to e-mail.  DHS OIG uses the Microsoft Outlook e-mail system.  Each OIG employee stores his/her files within Outlook in the way that works best for that particular employee.

21.   Once records are received, the FOIA processor will make a determination whether or not the records are responsive to the FOIA request.  If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

22.   Once the responsive records are processed by the FOIA processor, a second-line review of the records is conducted.  Once the second-line review is completed, the records are produced to the requestor in either an interim and/or final response.

IV.   **GENERAL DESCRIPTION OF PROGRAM OFFICE TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST 2022-IGFO-00237**

23.   **Office of Legislative Affair Searches**. The Office of Legislative Affairs, which is housed within the Office of External Affairs, supports DHS OIG's mission by providing relevant, accurate, and timely communications to DHS OIG's external stakeholders in Congress, the public, and the media. This office serves as the primary liaison to members of Congress and their staffs. The Public Affairs branch serves as the primary liaison to internal stakeholders, the media and the public.

24.   Plaintiff's request sought all records related to "allegations made against or about United States Customs and Border Protection agents "whipping" or otherwise engaging migrants attempting to cross into the United States in or near the Rio Grande River near Del Rio, Texas during the migrants' encounter with CBP agents on September 19, 2021 and any governmental response and investigation thereto including any subsequent official proceeding arising therefrom." Based on the FOIA unit's knowledge of the various program offices' missions, it was determined that the Office of Legislative Affairs may be in the possession of potentially responsive records; specifically, records related to items 1-2 and 6-9 of Plaintiff's FOIA request.[1] As all communications related to the September 19th would have been received by the Office of

---

[1] Plaintiff's FOIA request sought the following records: 1. All records of DHS OIG's examination of the Incident, 2. All records relating to DHS OIG's examination of the Incident, 3. All records relating to United States Department of Homeland Security, U.S. Customs and Border Protection Office of Professional Responsibility ("CPB OPR"), Report of Investigation, No. 202112280 (Apr. 17, 2022) ("OPR Report"), 4. All records relating to the DHS OIG's declination to investigate the Incident, 5. All records relating to the declination by the Department of Justice to prosecute Border Patrol Agents for conduct during the Incident, 6. All communications with DHS (excluding DHS OIG) relating to the Incident, 7. All communications with the Department of Justice relating to the Incident, 8. All communication with Office of the President or Executive Office of the President relating to the Incident and, 9. All records noting, memorializing, or summarizing a communication, or a portion thereof, responsive to specifications 6–8.

Legislative Affairs and any responses would have been released through their program office, a search tasking was sent on October 31, 2022 to the Office Legislative Affairs.

25. As the Office External Affairs serves as the primary liaison to Congress, the media and the public, all communications from DHS OIG, with the exception of investigative emails, including those of DHS OIG leadership regarding the September 19th incident described in Plaintiff's FOIA request would lie within the Office of Legislative Affairs.[2]

26. To gather responsive records, the Office of Legislative Affairs conducted searches of all of the databases and locations in which their records are stored and maintained, which include the following locations: 1) Outlook, 2) DHS OIG's shared drive and 3) the SharePoint database. The following search terms were used to pull potentially responsive records: "Whipping," "Haitian migrants," "Rio Grande River," "Del Rio," "Haiti," and "Horses."

27. In addition to a search conducted by the Office of Legislative Affairs, the FOIA unit also requested the Office of Information Technology ("IT") conduct a search of the Office of Legislative Affairs email inbox to ensure all communications were pulled. The Office of Technology used the following search terms: Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian with the timeframe of September 19, 2021 to present.

28. On November 10, 2022, all potentially responsive records were provided by IT to the FOIA unit for a responsiveness review and processing.

29. On November 15, 2022, the Office of Legislative Affairs began forwarding the results of its search to the FOIA unit for a further responsiveness review and processing.

---

[2] Any investigative emails between law enforcement personnel regarding related complaints would be located within the Office of Investigations.

30. The FOIA unit manually reviewed 1,520 pages of records from the Office of Legislative Affairs and IT for responsiveness and processed those records that were in fact responsive to Plaintiff's FOIA request.

31. **Office of Investigations Searches.** The Office of Investigations conducts investigations into allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs. These investigations can result in criminal prosecutions, fines, civil monetary penalties, administrative sanctions, and personnel actions. Additionally, The Office of Investigations provides oversight and monitors the investigative activity of DHS' various internal affairs offices.

32. DHS OIG maintains complaint and investigation related files on paper and in the electronic Enterprise Data System ("EDS"). Hard copies of records may be stored and maintained within an employee's office, at the investigating field office and/or the DHS OIG Sensitive Compartmented Information Facility ("SCIF"). EDS is the official DHS OIG electronic case management system. DHS OIG uses EDS to manage and store information and records relating to complaints and investigations of alleged criminal, civil, or administrative violations by DHS employees, contractors, grantees, beneficiaries, and other individuals and entities associated with DHS, and manage investigations born from those complaints to facilitate the tracking of resources used in investigative activities.

33. On October 31, 2022, based on the information sought in Plaintiff's FOIA request, records related to allegations of criminal misconduct by DHS employees a search tasking was also sent to the Office of Investigations.[3]

---

[3] Plaintiff's request specifically sought records into allegations of Border Patrol agents "whipping" migrants attempting to cross into the United States.

34. To gather records responsive to Plaintiff's FOIA request, the Office of Investigations searched for records located in the investigation's electronic case management system with the following parameters: 1) search keyword: whipping, 2) affected agency: CBP, BP, CBPOPR and, 3) record received date range: 8/1/2021 to 10/30/2021.[4]

35. On November 2, 2022, the search yielded an excel spreadsheet of all responsive complaints in response to Plaintiff's FOIA request, which was forwarded to the FOIA unit for a further responsiveness determination and a determination as to what records should be pulled.[5] Following a review of the excel spreadsheet, the FOIA unit met with the Office of Investigations on November 4, 2022 to discuss expanding search terms to ensure all potentially responsive records were captured during the Office of Investigations initial search.

36. On November 4, 2022, the Office of Investigations conducted a second search at the request of the FOIA unit for all responsive complaints and investigations with the following additional keywords: Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept. 19, 9/19, Haitians and Haitian.

37. On November 4, 2022, the Office of Investigations returned its search results to the FOIA's unit second search tasking. The search yielded approximately 308 complaints. The FOIA unit reviewed the excel spreadsheet for a further responsiveness determination. On November 7,

---

[4] As DHS OIG did not conduct any investigation into the September 19th allegations of "whipping" at the border, the Office of Investigation electronic case management system, EDS would house all relevant complaints and material responsive to Plaintiff's request.

[5] For requests that do not seek a specific investigation or complaint by name or case number, the Office of Investigation will run a search using specific parameters to pull all complaints, investigations and/or referrals that may be related to the specific topic of the FOIA request in the format of an excel spreadsheet. Once the Office of Investigation has complied the list of potentially responsive complaints, investigation and/or referrals it is forwarded to the FOIA unit. The FOIA unit will then further review the excel spreadsheet to determine what records are truly responsive to a FOIA request and then request that the Office of Investigations pull those specific records for processing and production.

2022, the FOIA unit requested the Office of Investigations pull all responsive records flagged during the responsiveness review to begin processing.

38. On November 17, 2022, DHS OIG issued its final response releasing 46 pages in full and 56 pages in part. Additionally, 16 pages were referred to the U.S. Customs and Border Protection (CBP).

39. On January 18, 2023, following a meet and confer, Plaintiff's provided a list of concerns and questions related to DHS OIG's production; specifically, Plaintiff expressed concern as to the absence of *contemporaneous* documentation related to DHS OIG's declination of the September 19th incident, which they believe the absence of ("key official record") strongly suggested the search or production was incomplete. Plaintiff further expressed that they believed DHS OIG should have conducted a search of OIG's leadership for responsive records. Lastly, Plaintiff highlighted issues within the production, such as, images being too small, vertical lines appearing on pages and potentially missing complaint attachments.

40. In an attempt to narrow issues, DHS OIG, through counsel, on February 24, 2023, informed Plaintiff that DHS OIG had performed a reasonable search for records and had searched all of the locations likely to contain responsive material, including, if they existed, any contemporaneous documentation or records involving leadership. But, the agency could not produce records that do not exist despite Plaintiff's belief that contemporaneous documentation or "key official record" were absent from the production.[6] As to Plaintiff's concern with the appearance of documents, DHS OIG advised that the investigative materials were pulled from an electronic database which may have caused gaps or resizing once extracted; however,

---

[6] Defendant's contentious that the search was inadequate is based only on speculation that other documents might exist, which is not sufficient to rebut an agency's explanation of an otherwise reasonable search. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Further, the FOIA does not require agencies to create new records. *Singh v. Federal Aviation Administration*, 783 F. App'x 753, 754 (9th Cir. 2019).

10

unfortunately, the FOIA unit does not have the ability to fix any issues relating to the size of the images or removal of any lines and records were produced exactly as they were provided to the FOIA unit.

41.	DHS OIG also re-reviewed the complaint pages highlighted by Plaintiff to ensure all attachments were provided. DHS OIG advised Plaintiff that several attachments had been marked as duplicates and others had been referred to CBP for review, processing and direct response to the Plaintiff. As a result of the FOIA unit's re-review, 2 attachments were determined to not have been produced. DHS OIG issued a supplemental response on February 24, 2023 producing those two attachments.[7]

42.	Unfortunately, despite several meet and confers in an attempt to narrow and resolve any outstanding issues, the parties were not able to come to a resolution. In addition to Plaintiff's concerns on January 18, 2023, Plaintiff indicated challenges to all redactions applied in DHS OIG's productions.

43.	DHS OIG has indicated below the basis under which information has been withheld in its final response dated November 17, 2022, and its supplemental response on February 24, 2023.

V.	**EXPLANATION OF FOIA EXEMPTION WITHHOLDINGS**

**Exemption 5**

44.	Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandum or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 incorporates three privileges: Deliberative Process, Attorney-Work Product, and Attorney-Client Privilege.

---

[7] DHS OIG Supplemental response contained 13 pages released in full, which was determined to be a public document and 1 page released in part, which was determined to be an email communication.

45. As a threshold matter, in order to withhold records or information from release pursuant to Exemption 5 of the FOIA, they must be inter- or intra-agency records. Here, DHS OIG invoked the deliberative process privilege of Exemption 5 for information contained in internal email communications between DHS OIG employees within the Office of Legislative Affairs.

46. Deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *See Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 867 (D.C. Cir. 1980).

47. Three policy purposes have been held to constitute the bases for the deliberative process privilege: "(1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action."[8]

48. Courts have established two requirements for the deliberative process privilege: 1) the communication must be pre-decisional and 2) the communication must be deliberative. *See Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

49. DHS OIG withheld in part under Exemption 5 discussions within email communication between DHS OIG employees. These communications include, but are not limited to draft email language sent from a subordinate to a supervisor for clearance prior to transmission, comments and questions related to information contained within the email and opinions and beliefs

---

[8] *McCann v. U.S. Dep't of Health & Hum. Servs.*, 828 F. Supp. 2d 317, 321 (D.D.C. 2011); *see Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010).

of colleagues discussing specific investigations in response to questions posed by Congress. The content within these emails is considered an integral part of DHS OIG's Office of Legislative Affairs process in strategizing responses to Congress, the media and the public.

50. In reviewing the records, DHS OIG considered the foreseeable harm standard. See 5 U.S.C. § 552(a)(8)(A)(i)(I). The release of the agency's internal agency discussions would cause harm to the agency's deliberative process and the quality of its decisions. The release of these open communications between employees and subordinates and their superiors will have a chilling effect on communication between agency employees and hinder the exchange of ideas. As these discussions include internal pre-decisional communications between DHS OIG's Office of Legislative Affairs personnel, the public access to these communications could lead to significant public confusion, and the public dissemination of inaccurate information and conclusions regarding DHS OIG's reports and/or investigations prior to DHS OIG finalizing and releasing any decisions or Agency comment.

51. As the Office of Legislative Affairs mission and purpose is providing relevant, accurate, and timely communications to DHS OIG's external stakeholders in Congress, the public, and the media, it is imperative that any internal discussions and pre-decisional discussions are withheld until decisions have been finalized for disclosure to Congress and/or the public to prevent dissemination of erroneous information.[9]

---

[9] *Am. Ctr. for L. & Just. v. DOJ*, 334 F. Supp. 3d 13, 21 (D.D.C. 2018) (finding that "'courts have generally found that documents created in anticipation of press inquiries are protected'" (quoting *Protect Democracy Project, Inc. v. DOD*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018))); *Protect Democracy Project*, 320 F. Supp. 3d at 177 (finding talking points to respond to press and Congress withholdable because "[r]evealing their contents would expose the process by which agency officials crafted a strategy for responding."

**Exemptions 6 and 7(C)**

52. Exemption 6 allows the withholding of information from disclosure that would constitute "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from public disclosure "records or information complied for law enforcement purpose… [if disclosure] could be reasonably be expected to cause an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

53. As a law enforcement agency, DHS OIG uses Exemptions 6 and 7(C) in concert. When determining whether to withhold information under 7(C), DHS OIG first assessed whether the records complied were for a law enforcement purpose. The records collected here consisted of email discussions between OIG employees and email discussions with third parties, such as Congressional staff related to allegations of misconduct by DHS employees. The records also include investigative complaints and attachments, which document the DHS OIG's investigatory processes and can lead to criminal prosecutions or administrative actions. Therefore, it was determined that the records were compiled for a law enforcement purpose.

54. When determining whether to withhold information under both Exemptions 6 and 7(C), DHS OIG further assessed whether the individual involved had a substantial privacy interest that would outweigh any public interest in disclosure. As discussed in DHS OIG's *Vaughn* Index, in reviewing the responsive records, DHS OIG determined that individuals named and identified in the records as subjects of OIG's investigations, complainants, witnesses, Congressional staff and DHS OIG Office of Legislative Affairs personnel have a substantial privacy interest that would be implicated by the public release of the information withheld in DHS OIG's production under Exemption 6 and 7(C). DHS OIG then balanced the privacy interest of these individuals with any FOIA public interest. In order to constitute a FOIA public interest, the information must shed light

on the working of the government in the performance of its statutory duties and and/or mission and any non-disclosure must outweigh the FOIA public interest.[10]

55. "Substantial privacy interests cognizable under the FOIA are generally found to exist in personal identifiable information as a person's name, physical address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number."[11]

56. Identifying information withheld under Exemption 6 and 7(C) in DHS OIG's production includes but is not limited to names, date of births, social security numbers, email addresses, phone numbers, physical addresses and identifying titles.

57. In conducting its analysis under the FOIA, it was determined that the release of the names and identifying information of these individuals would cause a clearly unwarranted invasion of their personal privacy. The records released in DHS OIG's production included records from the Office of Legislative Affairs and the Office of Investigations. As for the records containing investigative material, such as complaints and attachments, the names of witnesses, complainants, subjects of complaints and identifying information were withheld.[12] Specifically, as discussed in DHS OIG's *Vaughn* Index, publicity, adverse or otherwise, concerning the assistance of these individuals in a DHS OIG investigation or with DHS OIG investigative activities would seriously impair these individuals effectiveness in assisting with or participating in future investigations or investigative activities. The privacy consideration also protects these individuals from unnecessary, unofficial questioning regarding the investigation. The publicity associated with the release of their names or other identifying information in connection with allegations of

---

[10] *McGegee v. DOJ*, 800 F. Supp. 2d 220, 234 (D.D.C. 2011)("the relevant question is not whether the public would like to know the names of FBI agents and victims involved, but whether knowing those names would shed light on the FBI's performance of its statutory duties.")
[11] *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).
[12] In instances where attachments were publicly available, those documents were released in full.

misconduct could also trigger hostility and retaliation toward these individuals by those with strong opinions either way toward the entity or person being investigated.

58. DHS OIG's production also included records from the Office of Legislative Affairs, which included email communications related to the September 19th incident involving allegations made against United States Customs and Border Protection agents of "whipping" or otherwise engaging migrants attempting to cross into the United States. DHS OIG further applied Exemptions 6 and 7(C) to names of DHS OIG lower-level personnel. As discussed in DHS OIG's *Vaughn* Index, the disclosure of the names and contact information of these individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting OIG personnel to both harassment and annoyance in conducting their official duties and in their private lives by people who are antagonistic to the agency's mission, its investigations, or subjects or entities subject to the alleged incident and (2) potentially placing them in danger as OIG's personnel involved with often contentious law enforcement investigations.

59. The FOIA unit has considered the foreseeable harm standard when reviewing the records and applying FOIA exemptions (b)(6) and (b)(7)(C). During the course of an OIG criminal, civil, or administrative investigation, those individuals involve, such as witnesses and complainants provide sensitive information as part of the OIG investigation, which may subject them to harassment and/or embarrassment if their identity is revealed. Further, the disclosure of the identity and identifying information of DHS OIG's third-party witnesses or complainants will impede DHS OIG's ability to conduct future investigations. If a witness or complainant is aware that their identity will be disclosed, he or she may be less forthcoming or less likely to provide information during the course of an OIG investigation. DHS OIG's Office of Investigations rely

on truthful information and candid discussions with witnesses to assist in the determination as to whether allegations are substantiated or unsubstantiated.

60. To disclose the identity of an OIG witness, will deter both witnesses and complainants from being forthcoming for fear of harassment and/or retaliation. Not providing protection of witnesses, will not only result in a chilling effect, but also hinder DHS OIG's ability to fulfill its mission of providing independent oversight and detecting waste, fraud, and abuse in future investigations.

61. Additionally, DHS OIG applied Exemption 6 and 7(C) to the names of lower-level DHS OIG's personnel and personal identifiable information of these individuals, such as email address and phone numbers. The nature of DHS OIG's work is often sensitive and contentious, which may subject DHS OIG's personnel to harassment, if their identity or PII is disclosed. The release of DHS OIG's personnel and witnesses' PII and/or identifying information would cause a clearly unwarranted invasion of personal privacy.

62. The non-disclosure of these individuals' PII outweighs any public interest in how the government is performing its statutory duties. DHS OIG's Office of Investigations investigates allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs, which OIG has done and is evident by the complaints released to the Plaintiff. The Office of Legislative affairs provides relevant, accurate, and timely communications to DHS OIG's external stakeholders, which is apparent in the communications between DHS OIG Office of Legislative Affairs personnel and Congressional staff released in DHS OIG's production to Plaintiff. The releasing of names and identifying information of OIG's witnesses, complainants or lower-level DHS OIG's employees would provide little to no understanding of how the Department carried out its mission and may subject DHS OIG personnel to harassment if their names were publicly disclosed.

63. Therefore, DHS OIG's personnel and all individuals serving in a witness, complainant and third-party capacity, were afforded protection of their substantial privacy interests. DHS OIG segregated and released all non-exempt portions.

### Exemption 7(E)

64. Exemption 7(E) affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

65. In a review of responsive records under the FOIA, DHS OIG applied Exemption 7(E) to non-public law enforcement email addresses and web addresses, investigative documents For Official Use Only ("FOUO") and law enforcement information technology systems.[13] The information withheld is not well known to the public and is specific to law enforcement techniques and procedures; therefore, this information was withheld under Exemption 7(E).[14]

66. In conducting its analysis under Exemption 7(E), the FOIA unit considered the foreseeable harm in the release in the disclosure of this information. The disclosure of this information that is not publicly known would (1) increase risk of unauthorized access to DHS OIG's IT system, (2) hinder future law enforcement investigations and procedures, if released to the public and (3) subject law enforcement personnel to danger, harassment and annoyance in conducting their official duties.

---

[13] *Poitras v. Department of Homeland Security*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (withholding "'protected internal e-mail addresses, non-public intranet web addresses, and a secure internal e-mail tool'" because disclosure would increase risk of unauthorized access to agency's IT system).
[14] *Rugiero v. DOJ*, 257 F.3d 534, 551 (6th Cir. 2001) (stating that first clause of Exemption 7(E) "protects [only] techniques and procedures not already well known to the public").

67. Further, the disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. DHS OIG segregated and released all non-exempt portions.

## VI. SEGREGABILITY

68. U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

69. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

70. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA Exemptions specified above was correctly segregated and non-exempt portions were released. DHS OIG did not withhold any non-exempt information on the grounds that it was non-segregable.

71. Accordingly, DHS OIG releases all reasonably segregable potions of records responsive to Plaintiff's request.

## VII. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 5th day of July 2023.

Okechi Chigewe
Supervisory Government Information Specialist
Information Law and Disclosure Division, FOIA Division
U.S. Department of Homeland Security
Office of Inspector General