UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY, OFFICE OF INSPECTOR GENERAL<br><br>    Defendant. | Civil Action No. 22-3186 (CJN) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

   I.   THE AGENCY CONDUCTED AN ADEQUATE SEARCH FOR RECORDS ................. 1

      A.   The Agency Reasonably Identified All Program Offices Likely to Possess Responsive Records ........................................................................................................................ 2

      B.   Plaintiff's Challenge of the Agency's Search for Emails Is Without Merit ..................... 5

      C.   The Agency Employed Reasonable Search Terms to Identify Records .......................... 6

   II.   THE AGENCY'S VAUGHN INDEX IS LEGALLY SUFFICIENT ................................. 8

CONCLUSION..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Cases

*Crooker v. State Dep't*,
  628 F.2d 9 (D.C. Cir. 1980) .................................................................................................. 5
*Defs. of Wildlife v. Dep't of Interior*,
  314 F.Supp.2d 1, 10 (D.D.C. 2004) ...................................................................................... 5
*FDIC v. Bender*,
  127 F.3d 58 (D.C. Cir. 1997) ................................................................................................ 1
*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) ............................................................................................ 2
*Hall v. Dep't of Justice*,
  63 F. Supp. 2d 14 (D.D.C. 1999) .......................................................................................... 2
*Jett v. FBI*,
  139 F.Supp.3d 352 (D.D.C. 2015) ........................................................................................ 4
*Judicial Watch v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ........................................................................................ 2
*Kilmer v. Customs & Border Prot.*,
  Civ. A. No. 17-1566 (CKK), 2021 WL 1946392 (D.D.C. May 14, 2021) ........................... 3
*Oglesby v. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990) ............................................................................................ 1, 2
*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................................................ 1
*Steinberg v. Dep't of Justice*,
  23 F.3d 548 (D.C. Cir. 1994) ................................................................................................ 2
*Weisberg v. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) ............................................................................................ 1
*Weisberg v. Dep't of Justice*,
  745 F.2d 1476 (D.C. Cir. 1984) ............................................................................................ 7
*Wildlife v. Dep't of Interior*,
  314 F.Supp.2d 1 (D.D.C. 2004) ............................................................................................ 5

# INTRODUCTION

By and through undersigned counsel, Defendant, the Department of Homeland Security, Office of Inspector General ("the Agency"), respectfully submits this combined reply in further support of its motion for summary judgment (ECF No. 13, "Motion") and in opposition to Plaintiff's cross-motion for summary judgment (ECF Nos. 15 and 16, "Opposition") in this Freedom of Information Act ("FOIA") matter.

Plaintiff's Opposition argues that the Agency's search was inadequate and that the *Vaughn* index filed with the Agency's opening motion is legally inadequate and Plaintiff also appears to seek summary judgment on these issues.[1] But for the reasons described below, Plaintiff is incorrect and the Agency is entitled to summary judgment as a matter of law.

# ARGUMENT

**I.  THE AGENCY CONDUCTED AN ADEQUATE SEARCH FOR RECORDS**

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); see *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). A search is not inadequate merely because it failed to "uncover[] every document extant," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), and "[p]erfection is not the standard by which the reasonableness of

---

[1] The Agency's opening brief sought summary judgment as to its assertion of FOIA Exemptions 5, 6, and 7(C). While Plaintiff's Opposition challenges the legal adequacy of the Agency's *Vaughn* index, it does not appear to challenge any of the aforesaid exemptions. Under the law of this District, when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded. *See,* e.g., *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997).

a FOIA search is measured." *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003). Rather, a search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68.

An agency, moreover, is not required to examine "virtually every document in its files" to locate responsive records. *Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994); *see also Hall v. Dep't of Just.*, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that agency need not search for records concerning subject's husband even though such records may have also included references to subject). Instead, it is appropriate for an agency to search for responsive records in accordance with the manner its records are maintained. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Here, Plaintiff contends that the Agency's search was inadequate because it purportedly failed to search all locations likely to contain responsive materials and because it also purportedly failed to employ search terms and methods likely to locate all relevant records. For the reasons stated below, however, those arguments are misplaced. Accordingly, the Agency respectfully requests summary judgment with respect to the adequacy of its search in this case.

    **A.**    **The Agency Reasonably Identified All Program Offices Likely to Possess Responsive Records**

Plaintiff's FOIA request sought nine specified items relating to a border-crossing incident involving Haitian migrants and United States Customs and Border Protection agents which transpired on September 19, 2021, in or around the Rio Grande River in Del Rio, Texas. Based on the descriptions of the records sought, the Agency identified the program offices likely to possess responsive records and then tasked the appropriate program offices to conduct the relevant searches. As the Agency has clarified, the program offices deemed reasonably likely to possess

responsive records were its Office of Legislative Affairs and its Office of Investigations. *See* Supplemental Declaration of Okechi Chigewe ("Chigewe Supp. Decl."). ¶ 6.

Specifically, the Office of Legislative Affairs, which is housed within the Agency's Office of External Affairs, serves as the primary liaison with members of Congress and their staffs. *See* Declaration of Okechi Chigewe ("Chigewe Decl.") ¶ 23. Additionally, the Public Affairs branch within the Office of Legislative Affairs serves as the primary liaison to internal stakeholders, the media, and the public. *Id*. Pursuant to the Office of Legislative Affairs' role in the Agency, it would have received all communications related to the events of September 19, 2021 referenced in Plaintiff's FOIA request. *Id*. at ¶ 24. The Office of Legislative Affairs would have also provided any responses that may have issued from the Agency in response to any communications related to the events of September 19, 2021. *Id*. Therefore, the Office of Legislative Affairs was one of the program offices tasked with conducting a search for responsive records.

Moreover, the Agency's Office of Investigations program office "conducts investigations into allegations of criminal, civil, and administrative misconduct involving [Agency] employees, contractors, grantees, and programs." *Id*. ¶ 31. Therefore, that office was tasked with conducting a search for responsive records related to allegations of criminal misconduct by employees of the Agency. *Id*. ¶ 33. Additionally, pursuant to discussions with Plaintiff aimed at resolving the instant litigation prior to briefing, the Office of Investigations conducted an additional search for contemporaneous documentation and records involving the Agency's leadership. *Id*. ¶ 39. Despite Plaintiff's suggestion that such a search should have yielded responsive records, no such records were located by OI. *Id*. Nevertheless, the office's additional search further confirms that the Agency's searches were adequate and reasonable. *Kilmer v. Customs & Border Prot.*, Civ. A. No. 17-1566 (CKK), 2021 WL 1946392, at *9 (D.D.C. May 14, 2021) (holding that the agency's

3

search was reasonable when, among other things, it conducted "multiple searches of its relevant electronic databases," and "explained the scope and contents of the databases searched[.]").

Nevertheless, Plaintiff misguidedly contends that the Agency's search was inadequate because its "Inspector General, chief counsel to the Inspector General, deputy counsel, chief of staff, and principal deputy Inspector General were excluded from a search concerning an event that was prioritized by Secretary Mayorkas and referred to the Office of the Inspector General in fewer than three days." Pl.'s Opp'n at 10. Further, Plaintiff alleges that "[i]t strains credulity to suggest that the aforementioned offices are not 'reasonably expected' to possess records responsive to the Request," because the events of September 19, 2021, were "controversial." *Id*. Plaintiff fails to proffer any other reason for its impugnment of the Agency's search apart from this irrelevant assertion regarding the purportedly controversial nature of the aforesaid events. *See generally id.*

As the Agency has repeatedly explained, any records responsive to Plaintiff's FOIA request would have originated in the Office of Legislative Affairs and Office of Investigations program offices, and Plaintiff has offered no facts or argument to controvert the Agency's assertion. Based on the Agency's declarations, it is evident that any responsive records which would have been recovered by way of the more expansive search suggested by Plaintiff would have been—at most—duplicative, as any such records would necessarily have originated in the Office of Legislative Affairs and Office of Investigations program and would have been produced pursuant to the searches of those program offices.

Importantly, it is well-established that FOIA does not require agencies to produce duplicate records. *See*, e.g., *Jett v. FBI*, 139 F. Supp. 3d 352, 365 (D.D.C. 2015) ("The statute is not a discovery tool that requires agencies to produce every conceivable copy in the possession of every

4

governmental custodian."); *Defs. of Wildlife v. Dep't of Interior*, 314 F.Supp.2d 1, 10 (D.D.C. 2004) ("[I]t would be illogical and wasteful to require an agency to produce multiple copies of the exact same document."); *Crooker v. State Dep't*, 628 F.2d 9, 11 (D.C. Cir. 1980) (per curiam) ("Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim"). To the extent, then, that Plaintiff argues that the Agency failed to satisfy its search obligations under FOIA by failing to search its offices which may or may not be in possession of duplicative records, then that argument must fail.

**B.      Plaintiff's Challenge of the Agency's Search for Emails Is Without Merit**

Plaintiff's Opposition also cursorily challenges the Agency's search on the grounds that it allegedly failed to search the inboxes of individual employees in Office of Legislative Affairs and Office of Investigations. *See* Pl.'s Opp'n at 11.

When the Agency receives a FOIA request, "[t]he determination of whether or not… electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which employees maintain their files." *See* Chigewe Decl. ¶ 18. Based on the description of Plaintiff's FOIA request, Office of Legislative Affairs conducted searches of : "(1) Outlook, the program used for all [Agency] electronic mail, of all [Office of Legislative Affairs] employees and the [office's] inbox, (2) [the Agency's] shared drive and 3) the SharePoint database." *Id*. ¶ 18; *see also* Chigewe Supp. Decl. ¶ 12. As the Agency has explained, "[t]hese locations would house and store any relevant emails of all employees of the Office of Legislative Affairs and any relevant emails regarding the September 19th incident." *See* Chigewe Supp. Decl. ¶ 12. Further, the Agency's Office of Information Technology "conducted a supplemental search of the Office of Legislative Affairs' email inbox to ensure all relevant communications were pulled. This search would have included

5

any emails from [Agency] leadership, who emailed the inbox, transmitted emails from the inbox, or were copied on any communication from or to the inbox regarding the subject matters within Plaintiff's FOIA request." *Id.* at ¶ 12

Finally, Office of Investigations also conducted a search of its Enterprise Data System. *See* Chigewe Decl. ¶¶ 32, 34 n.4; *see also* Chigewe Supp. Decl. ¶¶ 13-14. That system "would house all relevant complaints and material responsive to Plaintiff's request, this would include all relevant investigative emails." *See* Chigewe Supp. Decl. ¶ 14. Accordingly, the Agency clarified that its search for emails responsive to Plaintiff's FOIA request was sufficient and that Plaintiff's challenge is without merit.

C. **The Agency Employed Reasonable Search Terms to Identify Records**

Plaintiff also purports to challenge the search terms utilized by the Agency. Specifically, Plaintiff argues that the search terms used were "unreasonably narrow and likely did not provide all responsive records." Pl.'s Opp'n at 11. Citing the Chigewe Declaration, Plaintiff complains that "root words" were omitted from the Agency's search of the Enterprise Data System. *Id*. at 12. Additionally, Plaintiff indicates that the Agency's failure to use the root word "whip," along with its various suffixes, points to the inadequacy of the Agency's search. *Id*. Moreover, Plaintiff complains that the word "migrant" was totally omitted from the Agency's search, given that the terms "Haitians" and "Haitian" are allegedly "too specific and, more importantly, a search of those terms cannot be expected [sic] return results for 'migrant.' *Id*. at 13.

As an initial matter, the Agency explains in its Supplemental Declaration that it inadvertently omitted the word "whip," along with its derivations, from the initial declaration. *See* Chigewe Supp. Decl. ¶ 20. This should be sufficient to alleviate Plaintiff's concerns regarding the purported omission of root words from the Agency's search. Further, while the Agency concedes

6

that the specific term "migrant" was not used in the search, the program offices used seventeen other words that would have captured the September 19th incident, not just "Haitians" and "Haitian." *See* Chigewe Decl. at ¶¶ 26-27, 34, 36.  Puzzlingly, Plaintiff complains that "[i]t is unclear how the omission of the noun most frequently used to describe those entering the country is plausible." Pl.'s Opp'n at 13. However, what would have been implausible would have been the inclusion of a noun invariably used to describe everyone entering the country at any time, particularly when the subject of Plaintiff's FOIA request exclusively seeks records relating to a small group of Haitian migrants who attempted to enter the country on September 19, 2021. Ultimately, Plaintiff's objection as to the omission of the word "migrant" from the Agency's search has no basis in logic or law.

Specifically, the law of this District is that speculation as to the potential results of a different search does not necessarily undermine the adequacy of the agency's actual search. *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (holding that "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate." (emphasis in original); *see also Hornbostel v. Dep't of Interior*, 305 F. Supp. 2d 21, 28 (D.D.C.2003) (stating that "[t]he focus of the adequacy inquiry is not on the results" of the search). "There is no bright-line rule requiring agencies to use the search terms proposed" by a plaintiff. *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). Moreover, agency defendants have discretion in crafting a list of search terms that "they believe[ ] to be reasonably tailored to uncover documents responsive to the FOIA request." *Id*. Where the search terms are reasonably calculated to lead to responsive documents, the Court should not "micro-manage" the agency's search. *See Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C.Cir.2002) (holding that the "FOIA,

requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro-manage the executive branch.").

Accordingly, Plaintiff has furnished no basis for its challenge of the search terms utilized by the Agency, and the Agency is entitled to summary judgment as to the adequacy of its search.

## II.   THE AGENCY'S VAUGHN INDEX IS LEGALLY SUFFICIENT

Finally, Plaintiff challenges the legal sufficiency of the Agency's *Vaughn* index. Apart from various, conclusory assertions regarding the *Vaughn* index's purported vagueness, Plaintiff's challenge appears to focus on the Agency's alleged "grouping entire categories of sometimes completely unrelated documents together and applying blanket rationales for applications of withholdings." Pl.'s Opp'n at 15. Further, Plaintiff contends that it is "forced to engage in a proverbial whack-a-mole to identify a document, determine which exemption has been applied to it, and try to assess Defendant's arguments of the applicability of an exemption a particular document." *Id*. Nevertheless, any impartial review of the Agency's *Vaughn* index should be sufficient to demonstrate the spuriousness of Plaintiff's challenge.

Importantly, to enable the Court to determine whether documents properly were withheld, an agency must provide a description of the information withheld through the submission of a *Vaughn* index, a detailed declaration, or both. *See Bigwood v. U.S. Agency for Int'l. Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007); *see also Oglesby v. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996); *see also Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). The *Vaughn* index and accompanying affidavits or declarations must "provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Jud. Watch, Inc. v.*

*FDA*, 449 F.3d 141, 146 (D.C.Cir.2006) (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

Here, the Agency's *Vaughn* index precisely notes the pages on which specific redactions were made, *see* ECF No. 13-4 at 3-7; it describes in detail the nature of the information being withheld, *see id.*; and the legal basis for the Agency's asserted exemptions and the harm that would ensue because of the release of the subject information, *see id.* Moreover, the *Vaughn* index identified the page numbers on which redactions were made pursuant to the specific exemptions that were asserted along with the justifications for such withholdings. *Id*. Importantly, "the 'grouping' of documents in the *Vaughn* index may be permissible" and "when the government's supporting affidavits are 'sufficiently detailed to allow the district court fairly to evaluate' the application of a claimed exemption to distinct categories of documents." *Competitive Enter. Inst. v. EPA*, 232 F.Supp.3d 172 (D.D.C., 2017) (quoting *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 955 F.Supp.2d 4, 14 (D.D.C. 2013)). Beyond Plaintiff's conclusory allegation that the Agency's *Vaughn* index is vague, no argument has been offered as to its purported legal inadequacy. Accordingly. Plaintiff's motion for summary judgment as to the legal inadequacy of the Agency's *Vaughn* index should be denied.

\*   \*   \*

## CONCLUSION

For the foregoing reasons, the Agency respectfully requests that this Court grant its Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

Dated: September 20, 2023
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      /s/ *Fithawi Berhane*
FITHAWI BERHANE
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-6653
Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*