# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 22-3186 (CJN) |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    **I.**   **DEFENDANT FAILED TO CONDUCT A REASONABLE SEARCH FOR RESPONSIVE RECORDS.** ........................................................................................ 2

        **A.**  **Defendant's Refusal to Search DHS OIG Leadership is Unreasonable.** .............. 2

        **B.**  **Defendant's Search is Inadequate Because it Did Not Run "Whip" and its Conjugates As Search Terms for All Data Sources** ................................................ 10

        **C.**  **Defendant's Search is Inadequate Because it Failed to Use "Migrant" or its Conjugates as a Search Term.** ................................................................................ 12

        **D.**  **Defendant's Failure to Search, At a Minimum, Email Inboxes of OI Employees is Inadequate.** ........................................................................................................ 12

    **II.** **DEFENDANT'S VAUGHN INDEX IS INADEQUATE.** ........................................... 16

**CONCLUSION** ......................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Aguiar v. DEA*, 865 F.3d 730 (D.C. Cir. 2017) ............................................................ 9

*Ancient Coin Collectors Guild v. Dep't. of State*, 641 F.3d 504 (D.C. Cir. 2011) ...................... 11

*Bader Fam. Found. v. Dep't. of Educ.*, 630 F.Supp.3d 36 (D.D.C. 2022) ................................... 11

*Brennan Ctr. v. DOJ*, 377 F.Supp.3d 428 (S.D.N.Y. 2019) ........................................................ 11

*Campaign for Responsible Transplantation v. FDA*, 219 F.Supp.2d 106 (D.D.C. 2002) ............ 23

*Ctr. for Biological Diversity v. Gutierrez*, 451 F.Supp.2d 57 (D.D.C. 2006) .............................. 22

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83 (D.D.C. 2009) .......................... 16

*Hooker v. HHS*, 887 F.Supp.2d 40 (D.D.C. 2012) ...................................................................... 9

*Judicial Watch, Inc. v. DOJ*, No. 1:19-CV-0879 (CJN), 2022 WL 898825 (D.D.C. Mar. 28, 2022) ........................................................................................................................ 9, 11, 13

*King v. DHS*, No. 1:20-CV-00995 (CJN), 2021 WL 3616891 (D.D.C. Aug. 16, 2021) ................ 9

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987) ................................................................................ 22

*Lawyers Committee for Civil Rights Under the Law v. United States Dep't. of Justice et. al.*, No. 18-CV-167 (EGS/GMH), 2020 WL 7319365 (D.D.C. 2020) .................................................... 16

*Mead Data Ctr. v. U.S. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1983) ......................... 17

*National Public Radio Inc., v. FBI*, 486 F.Supp.3d 293 (D.D.C. 2020) ........................................ 9

*Oglesby v. U.S. Dep't. of Army*, 920 F.2d 57 (D.C. Cir 1990) ...................................................... 8

*Pullam v. EPA*, 235 F.Supp.3d 179 (D.D.C. 2017) ...................................................................... 9

*Schaerr v. DOJ*, 435 F.Supp.3d 99 (D.D.C. 2020) ....................................................................... 9

## INTRODUCTION

Plaintiffs, Mike Howell and The Heritage Foundation ("Plaintiffs"), respectfully submit this Reply ("Reply") in support of their Cross-Motion for Summary Judgment (Aug. 21, 2023) (ECF No. 15) ("Plaintiffs' Motion" or "Plt. Mot").

Plaintiffs submitted their Freedom of Information Act ("FOIA") Request on July 22, 2022.  ECF No. 1-5 ("Request").  The Request sought nine Specifications of records—all of which sought *all* records or communications from the Department of Homeland Security Office of the Inspector General ("DHS OIG" or "OIG") about various topics stemming from a September 19, 2021 incident where Customs and Border Protection Agents allegedly "whipped" migrants seeking to enter the United States near Del Rio, Texas ("September 19 Incident").

Plaintiffs are entitled to summary judgment on two separate grounds.

*First*.  Defendant's search for records is inadequate for four reasons:  (1) Defendant's refusal to search OIG Leadership is unreasonable because OIG Leadership likely possesses responsive records; (2) DHS OIG did not use the search term "whip" and its conjugates for one of the two searches run within the Office of Legislative Affairs ("OLA"); (3) DHS OIG did not use "migrant" and its conjugates as search terms; and (4) DHS OIG Office of Investigations ("OI") limited its search to the OI's electronic case management system, Enterprise Data System ("EDS"), which likely does not contain all responsive OI records.

*Second*.  Defendant's *Vaughn* Index is legally deficient because it is so vague that it is nearly impossible for Plaintiffs to evaluate and potentially challenge Defendant's claimed exemptions.

This Court should grant Plaintiffs' Cross Motion for Summary Judgement and order Defendant to:  (1) conduct a search of DHS OIG Leadership; (2) apply the root expander of the

word "whip" to *all* OLA searches; (3) run a search for "migrant" for the narrow time window including and following the September 19 Incident; (4) at a minimum search the inboxes of individual OI personnel for responsive records; and (5) order the production of a new *Vaughn* Index that would allow Plaintiffs the opportunity to meaningfully litigate certain exemptions or other applied redactions.

## ARGUMENT

### I. DEFENDANT FAILED TO CONDUCT A REASONABLE SEARCH FOR RESPONSIVE RECORDS.

#### A. Defendant's Refusal to Search DHS OIG Leadership is Unreasonable.

There is no dispute Defendant only searched two program offices—OLA and OI. *See generally* Declaration of Okechi Chigewe (July 7, 2023 ) (ECF No. 13-3) ("1st Chigewe Decl."); Supplemental Declaration of Okechi Chigewe (Sept. 20, 2023) (ECF No. 18-2) ("2d Chigewe Decl."); Defendant's Response to Plaintiff's Statement of Material Fact as to Which There is No Genuine Dispute (Sept. 20, 2023) (ECF No. 18-1) (Admitting: (1) "Defendant did not search OIG [L]eadership offices for responsive records;" and (2) "Defendant did not search individual Office of Investigations email accounts."). And Defendant is quite clear that in their view, "*any* records responsive to Plaintiff's FOIA request would have originated in the Office of Legislative Affairs and Office of Investigations program offices" and indeed "any responsive records which would have been recovered by way of the more expansive search suggested by Plaintiff would have been—at most—duplicative, as any such records would necessarily have originated in the Office of Legislative Affairs and Office of Investigations program." Defendant's Reply in Support of Its Motion for Summary Judgement and Opposition to Plaintiff's Cross-Motion for Summary Judgment, at 4 (Sept. 20, 2023) (ECF No. 18) (emphasis added) ("Defendant's Reply" or "Def. Reply").

As Plaintiffs have previously explained, such a search is insufficient because Defendant's conclusory statements about where responsive records are located are simply wrong.  OIG Leadership likely has responsive records.  Therefore, a search of OIG Leadership is required.  *See* Plt. Mot. at 8–11.  Defendant's Reply only reinforces this conclusion.  First, it is clear that OIG Leadership had substantial involvement related to the September 19 Incident.  Second, the record makes clear that as a structural matter a search of OLA and IO would not retrieve all OIG Leadership records responsive to the Request.  Third, a review of the production confirms this.  Fourth, a cursory parsing of the Request demonstrates the substantial inadequacy of the search.

*OLA.*

1.      As an initial matter, Defendant does not directly dispute that OIG Leadership would have had, and indeed has, visibility into the September 19 Incident and OIG's response thereto.  Nor could it.  Defendant's document productions make clear that the Inspector General *himself* was, in fact, engaged in the controversy surrounding the issue.  *See* Declaration of Eric Neal Cornett at Ex. 1 at 024–030 (Oct. 20, 2023) ("Cornett Decl.").  Indeed, the Inspector General testified about the September 19 Incident before Congress and explained the actions of DHS OIG on April 6, 2022.  *See* Cornett Decl. Ex. 1 at 020–023.  In addition, the Inspector General's senior staff worked on Congressional engagement on the topic.  *See* Cornett Decl. Ex. 1 at 018 (Deputy Chief of Staff replying to an email concerning press reports about the incident).

Defendant impliedly concedes—as it must—the extraordinarily high profile of the September 19 Incident.  DHS's production in a related case makes clear that the highest levels of DHS from Secretary Alejandro N. Mayorkas and component heads down were intimately involved in the response to the September 19 Incident.  *See id.* at Exs. 2 & 3.  Given this

background, Defendant's submission appears to be that any such emails would be caught up in a

search of OLA and OI.  Not so.

      **2.**    Start with the text of the Request which sought nine Specifications of records

concerning the September 19 Incident:

1. *All* records of DHS OIG's examination of the Incident;
2. *All* records relating to DHS OIG's examination of the Incident;
3. *All* records relating to United States Department of Homeland Security, U.S. Customs and Border Protection Office of Professional Responsibility, *Report of Investigation, No. 202112280* (Apr. 17, 2022);
4. *All* records relating to the DHS OIG's declination to investigate the Incident;
5. *All* records relating to the declination by the Department of Justice to prosecute Border Patrol Agents for conduct during the Incident;
6. *All* communications with DHS (excluding DHS OIG) relating to the Incident;
7. *All* communications with the Department of Justice relating to the Incident;
8. *All* communication with the Office of the President or Executive Office of the President relating to the Incident; and
9. *All* records notating, memorializing, or summarizing a communication, or a portion thereof, responsive to specifications 6–8

Request at 1 (emphasis added).

      Under Defendant's own explanations a search limited to OLA and OI would structurally

plainly fail to capture all responsive records.

      Take OLA.  Defendant summarizes its own argument:

> Specifically, the Office of Legislative Affairs, which is housed within the Agency's Office of External Affairs, serves as the primary liaison with members of Congress and their staffs.  *See* Declaration of Okechi Chigewe ("Chigewe Decl.") ¶ 23.  Additionally, the Public Affairs branch within the Office of Legislative Affairs serves as the primary liaison to internal stakeholders, the media, and the public.  *Id.*  Pursuant to the Office of Legislative Affairs' role in the Agency, it would have received all communications related to the events of September 19, 2021 referenced in Plaintiff's FOIA request.  *Id.* at ¶ 24. The Office of Legislative Affairs would have also provided any responses that may have issued from the Agency in response to any communications related to the events of September 19, 2021.  *Id.*

Def. Reply at 3.  As an initial matter, the cited portions of the Declarations fail to provide any

record support for Defendant's argument—they merely echo Defendant's conclusory statement.

*E.g.*, 1st Chigewe Decl. at ¶ 24 ("all communications related to the September 19th incident would have been received by the Office of Legislative Affairs and any responses would have been released through their program office"); 2d Chigewe Decl. at ¶ 7 (similar).

Taking what the Chigewe Declarations *do* say at face value, at a structural level Defendant provides no explanation whatsoever of why *all* communications responsive to the Request would be found in an entity whose remit is limited to communications with "external stakeholders in Congress, the public, and the media" and serving as "the primary liaison to internal stakeholders, the media and the public." 1st Chigewe Decl. at ¶ 23. The description of OLA's role raises as many questions as it answers. For example, what is an "internal stakeholder?" "[I]nternal" to *what*? Surely the Inspector General, who is charged with superintendence over the entire OIG, need not communicate with his subordinates through an intermediary?

**3.** Moreover, at the level of the records produced here, Defendant *admits* that the *only* DHS OIG Leadership records that would have been captured by the search of the OLA program office are *communications* with one specific OLA email inbox, or with OLA staff. *See* 2d Chigewe Decl. ¶ 13 ("The Office of Information Technology (IT) further conducted a supplemental search of the Office of Legislative Affairs' email inbox to ensure all relevant communications were pulled. This search would have included any emails from OIG Leadership, *who emailed the inbox, transmitted emails from the inbox, or were copied on any communication from or to the inbox regarding the subject matters within Plaintiff's FOIA request* (emphasis added)); Defendant's Reply at 5–6.

**4.** Thus, *at most*, Defendant has established that a search of OLA may very well capture most *external* communications emanating from the DHS OIG to Congress and the media

only because those communications were *routed* through OLA.  Defendant's search may have also captured all related communications *from* DHS OIG Leadership *to* OLA staff or the OLA Inbox.  But that is only a small part of what the Request sought.  And that is why the failure to search Leadership is fatal to the reasonableness of Defendant's search.

By way of example, start with Specification 2:  "All records relating to DHS OIG's examination of the Incident."  Request at 1.  That Specification clearly brings in (among other things) communications *between* the Inspector General and his Leadership Team *about* OIG's actions.  Under a plain reading of the Chigewe Declarations, the following hypothetical responsive communications would not be captured.  An email from the Inspector General to his Chief of Staff or Counsel about the President's comments that Border Patrol Agents would "pay" for whipping migrants[1] or emails amongst the Inspector General and his Leadership Team to prepare for Congressional testimony.

Continue by way of example to Specifications 5–7.  Emails from the Inspector General to the Deputy Attorney General or Assistant Attorney General for Civil Rights about potential criminal culpability of the Border Patrol Agents accused in the September 19 Incident (as requested in Specifications 5 and 7 of the Request) would not be captured in the above search although they would be plainly responsive to the Request.  Nor would emails from the Inspector General to DHS Leadership (as requested in Specification 6) discharging the mandate that the

---

[1] At a September 24, 2021 press conference, President Biden stated while making a whipping motion with his hand:  "To see people treated like they did, horses barely running people over, people being strapped—its outrageous.  I promise you, those people will pay."  Adam Shaw, *A year after Biden falsely accused Border Patrol agents of whipping migrants, there's still no apology*, Fox News (Sept. 24, 2022), *found at* https://www.foxnews.com/politics/year-after-biden-falsely-accused-border-patrol-agents-whipping-migrants-theres-still-no-apology. Subsequent investigations found that no whipping of migrants occurred.

Inspector General engage directly with DHS Leadership on major issues (and Secretary Mayorkas concedes the September 19 Incident was major).

Turn to Specification 8: "All communication with the Office of the President or Executive Office of the President relating to the Incident." It simply strains all credulity to suggest that communications with the White House would not only *not* run through OIG Leadership, but *would* run directly from OLA or OI. As this Court is well aware, that is simply not how the Executive Branch works. As this Court knows, entities with law enforcement and investigative authority carefully limit communications with the White House, and, by way of example, the White House Counsel's Office does not take calls from career line investigative agents.

*OI.*

With respect to OI, Defendant states it conducted keyword searches of OI's EDS case management system that yielded a spreadsheet of various complaints and those underlying files were then reviewed, and if responsive, produced. *See* 1st Chigewe Decl. ¶¶ 32–38. Defendant adds that s*ome* communications are captured in EDS. 2d Chigewe Decl. ¶ 14 ("DHS OIG did not conduct any investigation into the September 19th allegations of 'whipping' at the border; therefore, the Office of Investigations electronic case management system, EDS would house all relevant complaints and material responsive to Plaintiffs' request, this would include all relevant *investigative emails*." (emphasis added)).[2] But as is explained, *infra* at 12–14, it is entirely

---

[2] Defendant makes the additional argument:

Additionally, pursuant to discussions with Plaintiff aimed at resolving the instant litigation prior to briefing, the Office of Investigations conducted an additional search for contemporaneous documentation and records involving the Agency's leadership. *Id.* 39.

unclear what an "investigative email" is.  In any event, whatever the definition, there is no claim

whatsoever that an "investigative email" would capture OIG Leadership records or

communications within Leadership or external to OI such as from the Inspector General himself

to the White House.  But again, those are entire categories of records responsive to the Request.

Moreover, the OI search was limited from "8/1/2021 to 10/30/2021."  Thus, even if it captured

*some* relevant emails, it would not capture *all* relevant emails around events such as the Inspector

General's subsequent April 6, 2022 testimony on the matter which occurred *after* October 30,

2021.  *See* 1st Chigewe Decl. ¶ 34; Cornett Decl. Ex. 1 at 020–023.

> *The Search Falls as a Matter of Law.*

Defendant has singularly failed to "explain that no other record system is likely to

produce responsive documents."  *Oglesby v. U.S. Dep't. of Army*, 920 F.2d 57, 68 (D.C. Cir

1990).  OIG Leadership likely has responsive records.  Indeed, during the meet and confer

---

Despite Plaintiff's suggestion that such a search should have yielded responsive records, no such records were located by OI.  *Id.*

Defendant's Reply at 3.  But the cited portion of the First Chigewe Declaration says *nothing* of the sort as Plaintiffs *already explained* when Defendant made a nearly identical argument in its Motion for Summary Judgment (July 7, 2023) (ECF No. 13-3) ("Def. Mot").  *Compare* Def. Mot at 7 *with* Plt. Mot at 8.  To reiterate, paragraph 39 of the First Chigewe Declaration says nothing about an OI search for Leadership records:

On January 18, 2023, following a meet and confer, Plaintiff's provided a list of concerns and questions related to DHS OIG's production; specifically, Plaintiff expressed concern as to the absence of contemporaneous documentation related to DHS OIG's declination of the September 19th incident, which they believe the absence of ("key official record") strongly suggested the search or production was incomplete.  Plaintiff further expressed that they believed DHS OIG should have conducted a search of OIG's leadership for responsive records.  Lastly, Plaintiff highlighted issues within the production, such as, images being too small, vertical lines appearing on pages and potentially missing complaint attachments.

1st Chigewe Decl. ¶ 39.  And nothing in the adjoining paragraphs supports Defendant's proposition either.  *Id.* at ¶¶ 38, 40.

process, Plaintiffs repeatedly objected to Defendant's failure to search OIG Leadership.  *See* 1st

Chigewe Decl. at ¶ 39.  Courts have repeatedly rejected agency searches in similar situations.

*See, e.g.*, *Aguiar v. DEA*, 865 F.3d 730, 739–40 (D.C. Cir. 2017) (rejecting conclusory

declaration that failed to explain "why the only reasonable place to look" for responsive records

was a particular records system searched); J*udicial Watch, Inc. v. DOJ*, No. 1:19-CV-0879

(CJN), 2022 WL 898825, at *6 (D.D.C. Mar. 28, 2022) (finding in part that the Justice

Department's decision to forward a FOIA request submitted to the entire Department to two

component offices while refusing to send the request to another component office that likely

contained responsive records rendered the search inadequate); *Schaerr v. DOJ*, 435 F.Supp.3d

99, 122 (D.D.C. 2020) (finding an agency's search was inadequate when it failed to explain

"why no other components of the agency were consulted"); *Pullam v. EPA*, 235 F.Supp.3d 179,

192 (D.D.C. 2017) (denying an agency's motion for summary judgment while declaring a

declaration did not describe an adequate search when it failed to "explain why a search was not

conducted in the Inspector General's email or electronic files when the request sought *all*

documentation *related* to the complaint filed by" a FOIA requester (emphasis added)); *Hooker v.

HHS*, 887 F.Supp.2d 40, 51 (D.D.C. 2012) (rejecting declarations that made conclusory

statements regarding where records were likely located) *cf., e.g.*, *King v. DHS*, No. 1:20-CV-

00995 (CJN), 2021 WL 3616891 at *2 (D.D.C. Aug. 16, 2021) (sustaining a search because the

agency sufficiently explained in an affidavit that *only* a particular office(s) within the agency

contained responsive records); *National Public Radio Inc., v. FBI*, 486 F.Supp.3d 293, 299

(D.D.C. 2020) (similar).  DHS OIG should have searched the communications of OIG

Leadership personnel.

Accordingly, the Court should order Defendant to search OIG Leadership for records responsive to the Request.

**B.      Defendant's Search is Inadequate Because it Did Not Run "Whip" and its Conjugates As Search Terms for All Data Sources.**

Plaintiffs' Motion clearly laid out that Defendant's search terms were unreasonable in light of the specific context of the Request—a focus on an incident where the Executive Branch, from the President on down, made extensive allegations that migrants had been whipped— because Defendant only used the search term "whipping" as opposed to the root word, *i.e.*, "whip" and all conjugations thereof.  Plt. Mot. at 12.  Indeed, Plaintiffs noted that Defendant had previously agreed to use "whip" and its conjugates as search terms.  *Id.*

Defendant's only answer is that the 1st Chigewe Declaration made a mistake:  "[T]he Agency explains in its Supplemental Declaration that it inadvertently omitted the word 'whip,' along with its derivations, from the initial declaration.  *See* 2d Chigewe Decl. ¶ 20.  This should be sufficient to alleviate Plaintiff's concerns regarding the purported omission of root words from the Agency's search."  Def. Reply at 6.

To start, that response all but concedes the central premise—a search that does not include "whip" and its conjugates as search terms is inadequate.  As to the error, fair enough, but only so far as the correction cures the defect.  The 2d Chigewe Declaration makes clear that "whip" and its conjugate's were only run on *two* out of the *three* searches Defendant ran.  Recall Defendant searched:  (1)  "the OLA's e-mail inbox" (1st Chigewe Decl. ¶ 26); (2) "'1) Outlook, 2) DHS OIG's shared drive and 3) the SharePoint database[]'" (*id.* at ¶ 27); and (3) OI's EDS database.  *Id.* at ¶ 34.  The 2d Chigewe Declaration is clear that only variations of the term "whip" was run for the OLA inbox:

> "The Office of Information Technology further conducted a search *of the Office of Legislative Affairs email inbox* using the following search terms:  Horse, Horseback, Horse Patrol, Del Rio, Rio Grande, Rio Grand, Rio Grand River, Rio Grande River, September 19, Sept 19, Sept.19, 9/19, Haitians and Haitian with the timeframe of September 19, 2021 to the present.  In addition to those search terms, the Office of Information Technology also included the following search terms on November 8, 2022:  Whipping, Whip and Whips, which was inadvertently omitted in the copying of search terms and drafting of the first declaration, thus variations of the term "whip" was included in OIG's search."

2d Chigewe Decl. ¶ 20 (emphasis added).

DHS OIG's failure to use the root expander for the term "whip" on *all* searches is a failure to search for logical variations of the term at the center of the controversy.  More pointedly, nothing in Defendant's papers explains *why* Defendant utilized the root expander for the OLA Inbox, but not for searches of OLA employee communications.  The failure to use the conjugates of the  essential term "whip" renders the search deficient under any metric.  *See, e.g.. Ancient Coin Collectors Guild v. Dep't. of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (granting FOIA plaintiff's motion for summary judgment and denying agency's motion for summary judgment on the grounds that the search should have included synonyms for the requested terms "test" and "ideological"); *Bader Fam. Found. v. Dep't. of Educ.*, 630 F.Supp.3d 36, 44 (D.D.C. 2022) (granting FOIA plaintiff's motion for summary judgment because the agency failed to fulfil its duty to craft reasonable search terms that included obvious substitutes for search terms); *Brennan Ctr. v. DOJ*, 377 F.Supp.3d 428, 434–35 (S.D.N.Y. 2019) (the agency's search should have included obvious alternate terms for "election integrity commission"); *Summers v. DOJ*, 934 F.Supp. 458, 461 (D.D.C. 1996) (finding that a search should have included obvious alternate terms for a FOIA request seeking "any and all commitment calendars").  And Defendant's failure to provide any explanation for why it used different search terms for similar data sources only compounds that sin.  *Cf. Judicial Watch.*, 2022 WL 898825, at *7 (accepting

"incongruous" use of different terms for different searches when the agency Declarants explained in detail why such a course was "prudent").

The Court should order Defendant to use "whip" and its conjugates as search terms in all its searches.

### C.     Defendant's Search is Inadequate Because it Failed to Use "Migrant" or its Conjugates as a Search Term.

Plaintiffs' Motion explained that it was facially unreasonable taking the context of the Request into account to fail to use the search term "migrant" and its conjugates given that migrant is "the noun most frequently used to describe those entering the country" and a term such as "Haitian" may not have been used in the rush of crisis communications.  Plt. Mot. at 13. Defendant's response is to say that "migrant" and its conjugates *would* be a relevant term, but that the term is overbroad because "migrant is a noun invariably used to describe everyone entering the country at any time, particularly when the subject of Plaintiff's FOIA request exclusively seeks records relating to a small group of Haitian migrants who attempted to enter the country on September 19, 2021."  Def. Mot at 7.  But that actually proves Plaintiffs' point. Plaintiffs objected to the total exclusion of "migrant."  Defendant provides no answer why a search for "migrant" and its conjugates was not run for a narrow time window surrounding the September 19 Incident, perhaps "9/19/2021" to "9/24/2021" the date of the Incident to the President's press conference.

### D.     Defendant's Failure to Search, At a Minimum, Email Inboxes of OI Employees is Inadequate.

Defendant doubles down on the position that all OI needed to do was search EDS.  *See* Def. Reply at 6.  In Defendant's telling, "[t]hat system 'would house all relevant complaints and

material responsive to Plaintiff's request, this would include all relevant investigative emails.' *See* 2d Chigewe Decl. ¶ 14." Def. Reply at 6.

To be sure, an agency may lawfully confine its search to a central records system in certain cases where the agency clearly demonstrated with considerable specificity that *all* records potentially responsive to the FOIA request at issue would be located in that system. *See, e.g.*, *Judicial Watch*, 2022 WL 898825, at *6–7 (detailing a sufficient explanation). But here all Defendant puts forward is *ipse dixit*. Defendant utterly fails to meet its burden to explain in detail *why* all responsive records are likely to be found in EDS. Moreover, what has been produced confirms the search was underinclusive. And the law does not permit that result.

1.     Take the central questions: What is EDS? What does EDS capture? What is an "investigative email[]"? Defendant's briefing says nothing on that point. The 1st Chigewe Declaration fares little better:

> EDS is the official DHS OIG electronic case management system. DHS OIG uses EDS to manage and store information and records relating to complaints and investigations of alleged criminal, civil, or administrative violations by DHS employees, contractors, grantees, beneficiaries, and other individuals and entities associated with DHS, and manage investigations born from those complaints to facilitate the tracking of resources used in investigative activities.

1st Chigewe Decl. at ¶ 32.

The 2d Chigewe Declaration, ostensibly written to clarify matters, further muddies the waters:

> The Office of Investigations conducted its search of EDS. As discussed in the July 5th Declaration, EDS is the official DHS OIG electronic case management system used to manage and store information and records relating to complaints and investigations. As noted in footnote 4 of the July 5th Declaration, DHS OIG did not conduct any investigation into the September 19th allegations of 'whipping' at the border; therefore the Office of Investigations electronic case management system, EDS would house all relevant complaints and material responsive to Plaintiffs' request, this would include all relevant investigative emails.

2d Chigewe Decl. ¶ 14.  This explanation is contradictory, stating on one hand that "DHS OIG did not conduct *any* investigation" and on the other hand, that the EDS case management system would include "all relevant investigative emails."  *Id*. (emphasis added).  Moreover, the 2d Chigewe Declaration nowhere defines what a "relevant investigative email" is.  Nor does it provide any information to support its claims that all "relevant investigative emails" are in fact contained in EDS beyond its conclusory statement.

Despite the complete lack of explanation into what is and is not in EDS, it is clear from the little *actually* known that *all* emails *related* to an investigation are not included.  There is a threshold that the email be "investigative" and (apparently) some further test of "relevan[ce]."  Would email communications about an incident divorced from a specific complaint or investigation number contained in EDS be captured by Defendant's search?  It appears not.  What about emails regarding matters collateral to the investigation, such as Congressional testimony?

Moreover, the EDS system was only searched for the time period of "8/1/2021 to 10/30/2021."  1st Chigewe Decl. at ¶ 34.  But it very well may be the case that OI employees had communication *after* that date that *related* to an investigative file, such as when the Inspector General testified on April 6, 2022 about the September 19 Incident or in response to on-going DHS media releases.[3]  Whatever the precise definitions are, they are clearly underinclusive as to the Request.

---

[3] *See DHS Update Regarding the Investigation of Horse Patrol Activity in Del Rio, Texas on September 19, 2021* (Nov. 16, 2021), *found at* https://www.dhs.gov/news/2021/11/16/dhs-update-regarding-investigation-horse-patrol-activity-del-rio-texas-september-19; *CBP Releases Findings of Investigation of Horse Patrol Activity in Del Rio, Texas* (July 8, 2022), *found at* https://www.cbp.gov/newsroom/national-media-release/cbp-releases-findings-investigation-horse-patrol-activity-del-rio.

**2.**      Defendant's production in this case confirms the infirmity in the search.
Defendant's statements appear to indicate that the number of "investigative emails" returned for
this Request is likely zero since there was no investigation.  Claims that there is zero email traffic
from OI strain credibility given the national controversy surrounding the incident.

Indeed, Defendant's search returns appear to have simply yielded data concerning
*complaints* received by OI.  *See* 1st Chigewe Decl. ¶ 32 ("DHS OIG uses EDS to manage and
store information and records relating to complaints and investigations of alleged criminal, civil,
or administrative violations by DHS employees . . . and manages investigations born from those
complaints to facilitate the tracking of resources used in investigative activities."); 1st Chigewe
Decl. ¶ 35 (discussing a 2, 2022 search of EDS that "yielded an excel spreadsheet of all
responsive complaints in response to Plaintiff's FOIA request . . ."); *id.* at ¶¶ 36–37 (discussing a
supplemental search conducted on November 4, 2022 that yielded "approximately 308
complaints.").

**3.**      In summary, OI appears to only have searched records linked to:  (1) complaints
filed with OI; and (2) some undefined set of "investigative emails" associated with an event in
EDS; for (3) a time period significantly more narrow than that sought by the Request.  And that
search is massively underinclusive under any fair reading of the Request.

Again, the Request sought a number of categories of records beyond complaints received
by OI that were logged into EDS, and "investigative emails" related to complaints.  On their
face, entire Specifications of the Request would likely not be captured by this search.  Defendant
does not even attempt to discharge its burden to show the search was adequate on this point.
Take Specification 2:  "All records relating to DHS OIG's examination of the Incident."  Request
at 1 (emphasis added).  Necessarily, those records would be outside of the investigation of a

complaint itself, which would be responsive to Specification 1.  Courts have routinely held searches inadequate in similar circumstances where there is a profound mismatch between the scope of the Request (broad) and the search (narrow).

Courts have found similar practices—in this case pulling and submitting a spreadsheet of complaints if a FOIA requester does not have a complaint number and only searching those complaint files—improper because the search method is not reasonably calculated to discover and release responsive records.  *Lawyers Committee for Civil Rights Under the Law v. DOJ.*, No. 18-cv-167 (EGS/GMH), 2020 WL 7319365, at *17 (D.D.C. 2020) (rejecting an agency's refusal to search particular agency offices for records responsive to a FOIA request because of the agency's stated "practice" to refer the search to other component offices.)[4]

Defendant's search of OI is unreasonable and this Court should order Defendant to conduct a full search of relevant OI staff for responsive records.

## II.   DEFENDANT'S VAUGHN INDEX IS INADEQUATE.

As a preliminary matter, any argument concerning Defendant's claimed exemptions is premature prior to Defendant complying with FOIA and performing a good faith search "calculated to uncover all relevant documents."  *Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D.D.C. 2009).  Any merits briefing on the proper application of exemptions would almost certainly involve an incomplete set of records, and Plaintiffs cannot fully evaluate Defendant's withholdings absent a full production.  And on this record, it is clearly inefficient to have multiple rounds of briefing on the same exemptions from different productions.  On the

---

[4] "'[A]n agency's FOIA duties are not limited to the 'traditional' or 'routine' procedures it uses to respond to FOIA requests[,]' but rather the agency 'must engage in a search reasonably calculated to discover and release responsive records.'" *Id.* at 17 (quoting *Col-gan v. DOJ*, No. 14-CV-740, 2020 WL 2043828, at 5 (D.D.C. 2020).

merits, Defendant's *Vaughn* Index ("*Vaughn* Index") (ECF No. 13-4) is woefully insufficient.  It

simply lacks the detail necessary for Plaintiffs to fully and fairly evaluate Defendant's

withholdings.[5]

A *Vaughn* index must provide "a relatively detailed justification, specifically identifying

the reasons why a particular exemption is relevant and correlating those claims with the

particular part of a withheld document to which they apply."  *Mead Data Ctnr. v. U.S. Dep't of

the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1983).  Defendant's *Vaughn* Index does not do this.

Take its assertion of Exemption 5 for example.  The *Vaughn* Index is singularly uninformative:

> "[t]hese communications include, but are not limited to draft email language sent from a
> subordinate to a supervisor for clearance prior to transmission, comments and questions
> related to information contained within the email and opinions and beliefs of employees
> discussing specific investigations in response to questions posed by Congress."

*Vaughn* Index at 6.

The *Vaughn* Index appears to describe three distinct categories of records:  (1) an email

from a subordinate to a supervisor; (2) commentary and questions relevant to those emails; and

(3) opinions and beliefs of OIG employees discussing specific investigations in response to

questions posed by Congress.  But the *Vaughn* Index is so generic that Plaintiffs have been

unable to decipher which redacted records fall into each of the above categories.

Tellingly, even where Defendant inadvertently released information it redacted

elsewhere, Plaintiffs are unable to discern into which Exemption 5 "category" that inadvertently

released information falls.  As an example, Defendant has redacted a June 15, 2022 Email

---

[5]  Moreover, Plaintiffs' analysis of the exemptions may change based on the incomplete
production and *Vaughn* Index.  For example, Plaintiffs generally have no quarrel with the
redaction of lower-level OIG employees' names under Exemptions 6 & 7(C), but that may
change with subsequent productions.

bearing the subject line "Two Items."



**From:** (b)(6), (b)(7)(C) @oig.dhs.gov>
**Sent:** Wednesday, June 15, 2022 2:15 PM
**To:** (b)(6), (b)(7)(C) @oig.dhs.gov>
**Cc:** (b)(6), (b)(7)(C) @oig.dhs.gov>
**Subject:** Two Items

   1.  News reporting this morning that DHS will be pressing adverse administrative charges against the BPAs, who were on the horse patrol in Del Rio, TX.  The report notes that the DHS OIG had previously "cleared"  the agents of criminal wrongdoing and that CBP OPR conducted the admin investigation. (b)(5)
(b)(5)

   2.  Please set a meet/greet with newly elected U.S. House member Mayra Flores (TX), whose district covers portions of the RGV.  She won a special election and will have to run again in the regular general election in Nov.

Thanks

**035**

18

| From: | (b)(6), (b)(7)(C) |
|---|---|
| Sent: | Wed, 15 Jun 2022 18:17:33 +0000 |
| To: | (b)(6) (b)(7)(C) |
| Cc: | |
| Subject: | RE: Two Items |

Will do!

(b)(6), (b)(7)(C)
Deputy Chief of Staff
DHS Office of Inspector General
(b)(6) (b)(7)(C)  @oig.dhs.gov

From: (b)(6), (b)(7)(C)  @oig.dhs.gov>
Sent: Wednesday, June 15, 2022 2:15 PM
To: (b)(6), (b)(7)(C)  @oig.dhs.gov>
Cc: (b)(6), (b)(7)(C)  @oig.dhs.gov>
Subject: Two Items

1. News reporting this morning that DHS will be pressing adverse administrative charges against the BPAs, who were on the horse patrol in Del Rio, TX. The report notes that the DHS OIG had previously "cleared" the agents of criminal wrongdoing and that CBP OPR conducted the admin investigation. (b)(6)
   (b)(6)

2. Please set a meet/greet with newly elected U.S. House member Mayra Flores (TX), whose district covers portions of the RGV. She won a special election and will have to run again in the regular general election in Nov.

Thanks

**018**

Cornett Decl. Ex 1, at 018, 035.

Defendant also included an unredacted copy of the same email:



*See id.* at Ex. 1 at 033.[6]  It is unclear to Plaintiffs where this email falls in the three "categories"

of identified records, even with the benefit of an unredacted copy.  And that is indicative of the

inadequacy of the *Vaughn* Index.  Is it the email between a subordinate and supervisory

employee, or commentary and questions relevant to that email, or opinions and beliefs of OIG

employees discussing specific investigations in response to questions posed by Congress?  This

inquiry is made more difficult by the inclusion of an email chain titled "CBP Del Rio."

---

[6]  Plaintiffs note that this does not appear to be a pre-decisional deliberation from a subordinate
to a supervisor, but rather a directive from a supervisor to a subordinate.

**From:** [(b)(6), (b)(7)(C)]
**Sent:** Fri, 1 Oct 2021 19:26:05 +0000
**To:** [(b)(6), (b)(7)(C)]
**Cc:** [(b)(6), (b)(7)(C)]                                        DHS-OIG Office of Legislative Affairs
**Subject:** RE: CBP Del Rio - COR inquiry

Got it – thanks!

**From:** [(b)(6), (b)(7)(C)]  [(b)(6), (b)(7)(C)] @oig.dhs.gov>
**Sent:** Friday, October 1, 2021 3:09 PM
**To:** [(b)(6), (b)(7)(C)] @oig.dhs.gov>
**Cc:** [(b)(6), (b)(7)(C)] @oig.dhs.gov> [(b)(6), (b)(7)(C)]
[(b)(6), (b)(7)(C)] @oig.dhs.gov>; DHS-OIG Office of Legislative Affairs <DHS-
OIG.OfficeofLegislativeAffairs@oig.dhs.gov>
**Subject:** RE: CBP Del Rio - COR inquiry

[(b)(6), (b)(7)(C)] thanks for flagging this. Approved response:

Hi [(b)(6), (b)(7)(C)]

We do not have an investigation or inspection into the actions of the Border Patrol Agents on horseback
at the Del Rio border. As you may know, CBP OPR has an open review.

Thanks,
[(b)(6), (b)(7)(C)]

**From:** [(b)(6), (b)(7)(C)] @oig.dhs.gov>
**Sent:** Wednesday, September 29, 2021 1:57 PM
**To:** [(b)(6), (b)(7)(C)]  [(b)(6), (b)(7)(C)] @oig.dhs.gov>
**Cc:** [(b)(6), (b)(7)(C)] @oig.dhs.gov> [(b)(6), (b)(7)(C)]
[(b)(6), (b)(7)(C)] @oig.dhs.gov>
**Subject:** RE: CBP Del Rio - COR inquiry

[(b)(6), (b)(7)(C)]   [(b)(6), (b)(7)(C)]

[(b)(5), ] reached out via Teams to tell me that INV is not investigating the issue of BPAs on horseback. [(b)(5)]
[(b)(5)]

[(b)(5), (b)(6), (b)(7)(C)]

Thanks,
[(b)(6), (b)(7)(C)]

From: [(b)(6), (b)(7)(C)]
Sent: Tuesday, September 28, 2021 10:45 AM
To: [(b)(6), (b)(7)(C)] [(b)(6), (b)(7)(C)] @oig.dhs.gov> [(b)(6), (b)(7)(C)] @oig.dhs.gov>
Cc: [(b)(6), (b)(7)(C)] @oig.dhs.gov> [(b)(6), (b)(7)(C)]
[(b)(6), (b)(7)(C)] @oig.dhs.gov>
Subject: FW: CBP Del Rio - COR inquiry

[(b)(6), (b)(7)(C)]

COR reached out to ask whether we've opened an investigation into the treatment of migrants on the
Del Rio border including actions of Border Patrol agents on horseback.

[(b)(5)]

Thank you,
[(b)(6), (b)(7)(C)]

From: [(b)(6), (b)(7)(C)]
Sent: Tuesday, September 28, 2021 10:32 AM
To: [(b)(6), (b)(7)(C)] @oig.dhs.gov>
Cc: [(b)(6), (b)(7)(C)]
Subject: CBP Del Rio

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize
and/or trust the sender. Contact your component SOC with questions or concerns.

Hi [(b)(5)]

I wanted to confirm whether the OIG has opened an investigation into the treatment of migrants on the
Del Rio border including the actions of Border Patrol agents on horseback. Thanks in advance.

[(b)(6), (b)(7)(C)]

*See id.* Ex. 1 at 015–16.  Again, Plaintiffs are forced to ask if this is the email between a

subordinate and supervisory employee, or commentary and questions relevant to that email, or

opinions and beliefs of OIG employees discussing specific investigations in response to

questions posed by Congress?

Defendant's *Vaughn* Index does not adequately describe what is being redacted in a

manner that would allow Plaintiffs to effectively argue for disclosure or for this Court to rule

likewise.  *See King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987).  Courts in this District have

found that an inadequate *Vaughn* index precludes entry of a final order.  *See, e.g.*, *Ctr. for

Biological Diversity v. Gutierrez*, 451 F.Supp.2d 57, 68 (D.D.C. 2006) (finding *Vaughn* index

inadequate for withholding of records pursuant to Exemption 5 and denying both parties'

motions for summary judgment on same.); *Defenders of Wildlife, Inc. v. USDA*, 311 F.Supp.2d

44, 60 (D.D.C. 2004) (ordering agency to submit new *Vaughn* indices with "proper detailed

document descriptions and reasons for withholding that illuminate the contents of the

documents."); *Campaign for Responsible Transplantation v. FDA*, 219 F.Supp.2d 106, 116

(D.D.C. 2002) (finding *Vaughn* indices inadequate for failing to provide the necessary functional

descriptions of documents and ordering Defendant to submit new *Vaughn* indices).

### CONCLUSION

Plaintiffs' Cross Motion for Summary Judgment should be granted and Defendant should

be ordered to:  (1) search OIG Leadership; (2) include "whip" and its conjugates as search terms

in all searches; (3) include "migrant" as a search term with a narrow date range; (4) search OI

records beyond the EDS database; and (5) provide a record-by-record *Vaughn* Index with

detailed descriptions of the records or portions thereof withheld.

Dated:  October 20, 2023                            Respectfully submitted,

                                                    /s/ Samuel Everett Dewey
                                                    SAMUEL EVERETT DEWEY
                                                    (No. 999979)
                                                    Chambers of Samuel Everett Dewey, LLC
                                                    Telephone:  (703) 261-4194
                                                    Email:  samueledewey@sedchambers.com

                                                    ERIC NEAL CORNETT
                                                    (No. 1660201)
                                                    Law Office of Eric Neal Cornett
                                                    Telephone:  (606) 275-0978
                                                    Email: neal@cornettlegal.com

                                                    DANIEL D. MAULER
                                                    (No. 977757)
                                                    The Heritage Foundation
                                                    Telephone:  (202) 617-6975
                                                    Email:  Dan.Mauler@heritage.org

                                                    ROMAN JANKOWSKI

(No. 975348)
The Heritage Foundation
Telephone:  (202) 489-2969
Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*