IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


HERITAGE FOUNDATION,

                                   Civil Action
       Plaintiff,          No. 1:22-3186

      vs.                     Washington, DC
                                     January 10, 2025
U.S. DEPARTMENT OF HOMELAND SECURITY,

       Defendant.          1:06 p.m.
_____/


TRANSCRIPT OF VIDEO STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:


| | |
|---|---|
| **For the Plaintiff:** | **Fithawi "Isaac" Berhane**<br>U.S. ATTORNEY'S OFFICE<br>601 D Street NW, Suite 7-210<br>Washington, DC 20001<br>Email: fithawi.berhane@usdoj.gov |
| **For the Defendant:** | **John Bardo**<br>**Peter Pfaffenroth**<br>DOJ-USAO<br>601 D Street NW<br>Washington, DC  20530<br>Email: john.bardo@usdoj.gov |
| **Reported By:** | **Lorraine T. Herman, RPR, CRC**<br>Official Court Reporter<br>U.S. District & Bankruptcy Courts<br>333 Constitution Avenue NW<br>Washington, DC 20001<br>lorraine_herman@dcd.uscourts.gov |


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good afternoon, Your Honor.

3          This is civil case year 2022-3186, *Heritage*

4  *Foundation, et al versus DHS.*

5          Counsel, please introduce yourselves for the

6  record, beginning with the plaintiff.

7          **MR. DEWEY:**  Samuel Dewey for plaintiffs.

8          **THE COURT:**  Mr. Dewey.

9          **MR. DEWEY:**  Good afternoon, Your Honor.

10          **MR. BERHANE:**  AUSA Isaac Berhane for the

11  United States.  Good afternoon, Your Honor.

12          **THE COURT:**  Good afternoon, Mr. Berhane.

13          So I've reviewed all of the status reports,

14  re-reviewed the most recent set, and thought it would be

15  helpful to get us all together and see what the current

16  status of things is but to include whether any of the

17  parties made any progress and try to figure out a way that

18  the search returns might be narrowed.  I don't mean to

19  preempt any other discussions.

20          Mr. Berhane, where do things stand from your

21  perspective?

22          **MR. BERHANE:**  Your Honor, briefly.  I believe the

23  exact number of pages, I think, is 630,000 pages or

24  thereabouts, potentially more, is what we recovered from our

25  supplemental searches.

1        From what I understand, plaintiff has one proposal

2   for narrowing, which has reduced the potentially responsive

3   records by about 1,000 pages or so.  So we are more or less

4   where we were at the time of the beginning of our

5   discussions.

6        **THE COURT:**  Okay.  Mr. Dewey?

7        **MR. DEWEY:**  Yes, Your Honor.

8        From our perspective, we have this unknown number

9   of records, and plaintiffs have been trying to narrow it,

10  but we are obviously sitting -- or known number of records.

11       Plaintiffs have been trying to narrow, because

12  that does sound like a lot of records, but plaintiffs are,

13  kind of, behind the veil, and we don't know why we are

14  getting that many search results.  Was it that this incident

15  with the whipping was extensively discussed at the highest

16  levels of the agency or is it something else?  We presume

17  it's something else, but we don't know where it's coming

18  from.

19       So, you know, we eventually did get a search term

20  report from the defendants.  We took a look at that, and

21  that was the basis of our first narrowing proposal, which

22  was to exclude a set of supplemental search terms, that

23  seemed to be generating a lot of hits.

24       The data we got was not clear on whether they were

25  de-duplicated hits or whether the hits were potentially

1    intended duplications; so that's how we got to the initial

2    narrowing, just taking a look at that and ballparking it.

3            The other accommodation I've offered, as

4    Your Honor knows, oftentimes in new discovery where you get

5    an unanticipated amount of pages, the reason for that

6    quickly becomes apparent.  Once you get into the documents,

7    there is usually some lengthy document driving an issue.

8            So the other accommodation that we have offered,

9    and that we are happy to keep discussing is to say, I

10   understand there is an issue with a large Excel, we said

11   that we will put that to one side for now.  Then the other

12   point that we've made, that worked in some other cases, is

13   to say, defendant should start processing the documents, and

14   if there is something driving this incredibly large volume,

15   we can then have a discussion and scope it out completely or

16   scope it out in part.

17           For example, I know in other cases with DHS, Main,

18   as opposed to the OIG, but I will use this as a helpful

19   proxy, we've had plenty of cases where the search was

20   pulling in extremely large documents that were a Summary

21   Memo of Pending Issues in Front of the Secretary.  I could

22   see that being, you know, 15 different cases in front of the

23   IG.  Only one of them ours.  And that document keeps getting

24   emailed around, keeps getting sent back and forth.

25           One of the accommodations we've offered to make

1    is, if there is a document like that, you know, we are happy

2    to scope out non-responsive material.  We've done that with

3    QFR responses, as well, which could be generating some of

4    this in other DHS cases as well.  If there are 50 QFRs, and

5    only one of them implicates the subject matter, we will

6    redact the rest.  Don't worry about it.  Let's focus on

7    other issues.

8           We've issued all of those accommodations, but from

9    our perspective, we feel we are in a bit of a bind, because

10   we know there are a lot of pages, and we don't expect that,

11   but we don't know why.  And on the data we have access to,

12   we really can't really put our finger on anything to say,

13   This is what the problem is.  We've looked at the search

14   terms again.  They do seem to be calculated.  We don't have,

15   other than the one we excluded, anything that's giving off a

16   disproportionate volume of hits on the data we have.  We are

17   really not sure how to proceed.

18          My proposal would be that defendant should start

19   reviewing, because I think that will give us some idea of

20   what's driving this volume, and that it will come out, or

21   some sort of sampling.  Then we can know.  We agree.  You

22   can redact this.  You can exclude this type of document that

23   just really either isn't, in fact, responsive or isn't

24   really interesting, just exclude that by running an

25   exclusionary search.

1      So we are happy to be flexible.  There is just a

2  difficulty because we don't have the data.

3          **THE COURT:**  Mr. Berhane, you were shaking your

4  head at various things.  Do you want to respond?

5          **MR. BERHANE:**  Yes, Your Honor.

6          Just to be clear, the most recent, I guess,

7  accommodation that plaintiff proposed regarding the

8  spreadsheet and everything else after that, I only got that

9  20 minutes ago, roughly 25 minutes ago, and I still need to

10  consult with the agency on this.  I mean, to my mind, I

11  mean, that's not much of an accommodation at all.  We are

12  just being told to process the records.

13          Based on my calculation, if we proceed at the

14  normal of 500 pages per month, that will take us about 30

15  years, assuming in the most optimistic case there are no

16  hiccups in the intermediate period.  I guess there is a real

17  question to my mind as to whether the FOIA requests even

18  reasonably describes records sought, if we are just coming

19  back with such a voluminous amount of potentially responsive

20  records.

21          I wonder if us being told to begin processing is

22  going to require us a forfeit our potential defense, at some

23  point in this litigation, assuming we ever go back to

24  briefing.

25          As for everything else, as I've been discussing

1  with opposing counsel since last May, which is when I first

2  proposed that we begin narrowing the scope of the FOIA

3  requests, we don't know what plaintiff is actually looking

4  for.  Plaintiff, obviously, knows better than us what they

5  are looking for.  I mean, all we are really asking plaintiff

6  to do is just narrow their focus and identify which search

7  terms they are most interested in.  Because, I mean, at this

8  stage, I don't think it's beneficial for either party for us

9  to have to begin processing records for decades.

10  **THE COURT:**  Putting aside whether it makes sense

11  or not, I take Mr. Dewey to be suggesting something like the

12  following, which would be, Process a random selection of,

13  let's call, it a thousand pages.  When that happens, that

14  will provide the plaintiff with concrete examples of what is

15  being hit on, with the use of the search terms, which will

16  then drive a more-focused discussion between the parties

17  about whether there is narrowing that can occur.

18  I say, Putting aside whether that makes sense.

19  One could imagine doing that, if it did, without waiving or

20  otherwise requiring, say, processing of the whole 630,000

21  pages, or whatever it is, or foregoing the opportunity to

22  argue that the FOIA request doesn't reasonably describe the

23  records sought.  It would just be a step in the direction of

24  providing information that would be part of the foundation

25  of further discussions.

1          Mr. Dewey?

2          **MR. DEWEY:**  Your Honor is exactly correct.  That

3    is what I am suggesting.  And I want to make clear, we

4    aren't suggesting that this should be a case where this

5    volume is pages is processed.  We would like to get the

6    volume down.  And part of the difficulty here, in our

7    mind —— you know, I understand the point that the government

8    is making about, This is a lot of results.  Is the FOIA

9    request reasonable?  For the other components of the IG, the

10   volume was very small.  Similar FOIA requests were sent

11   elsewhere.  For example, Main Justice, the volume of records

12   was very small, and we were looking for the same thing.  We

13   were using, you know, similar sets of search terms.

14          So my concern, Your Honor, is that something is

15   driving this, which is out of the ordinary.  But I can't, to

16   Your~Honor's point, put my finger on that.  So that's why I

17   was suggesting, you know, some sort of sampling, some way to

18   get a better data cut.

19          I understand what my friend is saying.  I am just

20   suggesting from a "getting this resolved efficiently" point,

21   more data would be helpful, because if there is some way for

22   me to quickly say, Yes, cut this out, this is what is

23   driving the volume.  We are going to do that.  I mean, we

24   don't want to wait five years for records either.  We want

25   to understand what happened at the higher levels of the IG

1      in this incident.  Sure.  But we want to move this along.

2              So that's why I am asking, you know, I've asked

3      the government to consider this approach, and our view is

4      that we just don't have enough data.  And I think you would

5      see that in other cases.  And I don't mean to suggest this

6      is comparable, but in other contexts dealing with the

7      discovery, this would be the logical approach, even coming

8      from the government.

9              The government served my client with a subpoena.

10     It would not be unilaterally narrow.  I realize it is a

11     different approach.  It would be, Okay, if we have a

12     problem, let's work through it.  That's all we are

13     suggesting here, with some sort of sampling, some additional

14     sort of data.

15             **THE COURT:**  Right.

16             **MR. DEWEY:**  Your Honor is correct.  We don't want

17     to process 630,000-and-some-odd pages.

18             **THE COURT:**  There is one question, and I wonder

19     whether you know, Mr. Berhane, or perhaps the government

20     knows.  Obviously we are talking about 630,000 potentially

21     responsive pages.  Do you happen to know how many documents

22     are represented by those pages?

23             **MR. BERHANE:**  I don't know, Your Honor.  I can try

24     to find out.  My understanding is —— I got the impression my

25     agency counsel didn't know either, but I can double check

1    that.

2         **THE COURT:**  I'm just going to say a couple things.

3    First, I really have very little interest in being in the

4    middle of discussions between parties trying to narrow

5    document requests -- and I know this isn't a document

6    request, strictly speaking, but, you know, in the middle of

7    a meet and confer around scoping and narrowing and the like,

8    I'd much rather not be in the middle of this, A.

9         B, it seems to me at least possible that two

10   things could be helpful and lead to the kind of narrowing

11   that it seems like everyone is interested in.  And the first

12   is understanding whether those 630,000 pages are represented

13   by a very large number of documents, each of which would

14   necessarily or, like, at least on average would be a

15   relatively small number of pages; or if, instead,

16   hypothetically, if there are a few documents of particular

17   types or even just a few documents that represent the

18   mountain or the lions' share of the pages.

19        I mean, if, hypothetically, a very large

20   percentage of the pages were represented by a very small

21   percentage of the documents, then maybe they could be tabled

22   for now.  None of us really knows the answer to that

23   question.  So that would be interesting to know.

24        Another thing would be interesting to have the

25   government's view on is whether it would be prepared,

1    subject to my making quite clear, as I already have, but I

2    could enter an order to this effect, whatever you need to be

3    covered, that if you were to do something like a sample,

4    which could be random or however you and Mr. Dewey agree it

5    might be helpful or if you were to do two months' worth of

6    randomized sample processing and production, you could do

7    that without waiving, in any way, your argument that you

8    shouldn't have to do any more than that, either because the

9    FOIA doesn't reasonably describe the records sought or even

10   if it does, the burden is too large and you should get some

11   other schedule or whatever.  It would be an effort

12   undertaking and blessed by me, for the sole purpose of see

13   if a meeting of the minds can occur with respect to

14   narrowing.

15          So, what I'd like to do is have the government,

16   basically, consider those two questions.  Would it be

17   willing to do two or maybe three months makes sense -- I

18   don't know what the right number is -- to consider whether

19   some sampling might help.  Consider whether it can figure

20   out the amount of documents representing the certain amount

21   of pages of responsive records.

22          Then, once it has those views, meet and confer

23   with Mr. Dewey about the answer to those two things and

24   whatever other ideas the parties could come up with for

25   purposes of narrowing this.

1            As I said, I really would not have to wade into

2     another dispute on this question but I will.  It feels to me

3     that the parties need to be doing -- this is not meant to

4     suggest the government has done anything wrong or plaintiff

5     has done anything wrong.  I'm just saying it feels like more

6     getting in the room and hashing this out with more

7     information could be very helpful here.  Those two pieces of

8     information, Mr. Berhane, might be helpful.  I don't know.

9            I'm not going to impose any requirement on anyone

10    to do anything here, other than to say that I want the

11    parties, within a month, to see if they can work this out.

12    Those two ideas being, ones that come to mind, Mr. Berhane,

13    others you can think of, others you can think of, Mr. Dewey.

14    If necessary, or helpful, I would recommend people actually

15    getting on the phone and having a real conversation, rather

16    than sending proposals by email 20 minutes before hearings.

17    Okay?

18            So for my purposes, all I'm going to do is order a

19    joint status report to be filed within a month.  So let's

20    just call it -- we are going to a slightly different

21    schedule, I suppose -- February 10th.  I want to know the

22    parties' views on whether and to what extent further

23    efforts, of the kind we have discussed today, have been

24    helpful.

25            In the event not, and we need to have another

1    hearing, I will do that.  And, if necessary, I can wade into

2    motions practice on these questions.  But I think it's in

3    everyone's interest to do that.  I think everyone wants to

4    narrow this, me included.  I would just rather not be in the

5    middle of it.

6          So good luck.  Joint status report due February

7    10th.  Take these thoughts for what they are worth.

8          Anything else we should discuss today, from the

9    plaintiff's perspective?  Mr. Dewey.

10         **MR. DEWEY:**  No.  Thank you, Your Honor.  I think

11   that's a good path forward and take Your~Honor's points.

12   Thank you.

13         **THE COURT:**  Thank you.

14         Mr. Berhane, anything from your perspective?

15         **MR. BERHANE:**  Nothing further, Your Honor.  Thank

16   you.

17         **THE COURT:**  Thank you and, I mean this, good luck.

18      (Proceedings concluded at 1:25 p.m.)

19

20

21

22

23

24

25

1

# **C E R T I F I C A T E**

2

3       I, **Lorraine T. Herman, Official Court Reporter,**

4 certify that the foregoing is a true and correct transcript

5 of the record of proceedings in the above-entitled matter.

6

7

8

9    March 4, 2025          /s/  Lorraine T. Herman

10       **DATE**                 **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25