# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, *et al.*,

     *Plaintiffs*,

     v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

     *Defendant*.

Civil Action No. 1:22-cv-03186 (CJN)

## ORDER

Both the government and Plaintiffs Heritage Foundation and Mike Howell (together

Heritage) have moved for summary judgment in this long-pending matter. *See* ECF 46; ECF 47.

For the reasons that follow, the Court denies the government's motion and grants in part and denies

in part Heritage's cross-motion.

In July 2022, Heritage filed a Freedom of Information Act request with the Department of

Homeland Security. ECF 47-2 at 1. The request sought all records concerning allegations made

against Customs and Border Protection agents "'whipping' or otherwise engaging migrants

attempting to cross into the United States in or near the Rio Grande River near Del Rio, Texas

during the migrants' encounter with CBP agents on September 19, 2021, along with any records

documenting any governmental response and investigation relating to the aforesaid alleged

events." *Id.* In October 2022, Heritage filed this suit after not receiving any records up to that

point. ECF 1. Following searches in the Office of Legislative Affairs and Office of Investigations,

the Department's Inspector General produced 46 pages in full and 56 pages in part in November

2022 and 13 pages in full and one page in part in February 2023. ECF 47-2 at 2. After a hearing

in February 2024, the Inspector General agreed to conduct supplemental searches.  *Id.*  These searches led to the production of 33 additional records and a spreadsheet that lists 628,277 pages of more potentially responsive records.  *Id.*  After conducting "[a] preliminary review of portions of th[ose] records," the Department concluded that "the vast majority were not responsive."  ECF 46-3 ¶ 24.

The Parties—with some intervention from the Court, *see, e.g.*, Min. Entry of Jan. 10, 2025; Min. Order of Feb. 11, 2025; Min. Order of Mar. 17, 2025—have attempted to negotiate the best way to review the records flagged in the spreadsheet, but a lack of progress in those efforts prompted the motions at issue here, ECF 46; ECF 47.  The use of search terms to narrow the results has not solved the problem thus far, and the government claims that "there [is] no way for [DHS's] FOIA unit or . . . IT Department to definitively say which search terms were causing false positives without reviewing every page of each document, identifying which terms retrieved each record, assessing whether the records were responsive or non-responsive, and systematically tracking the results."  ECF 46-3 ¶ 27.

The government argues that these issues illustrate that Heritage "failed to 'reasonably describe' records sought in the [FOIA] request in a manner that would enable the Office of Inspector General to search for, process, and release non-exempt records without an undue burden."  ECF 46 at 1.  It accordingly requests that the Court enter a judgment in its favor.  ECF 46-4 at 1.  Heritage responds that its "[r]equest is reasonably described because it sought specific information about a particular incident within a narrow timeframe."  ECF 47-1 at 1.  And it contends that because DHS "bears the burden to search" and "best knows its own records," the Court should order it to "remove the false hits, and produce the withheld records with an accompanying *Vaughn* index within 30 days."  *Id.* at 2.

"Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982)). "In light of FOIA's pro-disclosure purpose, an agency has 'a duty to construe a FOIA request liberally.'" *Evans*, 951 F.3d at 583 (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). But "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)).

Here the FOIA request reasonably described the records Heritage seeks. In particular, the request for "all records related to allegations made against or about [CBP] agents 'whipping' or otherwise engaging migrants attempting to cross into the United States in or near the Rio Grande River near Del Rio, Texas during the migrants' encounter with CBP agents on September 19, 2021, along with any records documenting any governmental response and investigation relating to the aforesaid alleged events," ECF 47-2 at 1; *see also* ECF 1-5 at 2–4, specified the subject matter, date, and relevant agency office for the records. Indeed, the request was reasonably specific enough that DHS already produced responsive records from its Office of Legislative Affairs and Office of Investigations. *See* ECF 13-3 at 6–11; *see also Yeager*, 678 F.2d at 326 ("It is clear in this case that the [agency] knew 'precisely' which of its records had been requested and the nature of the information sought from those records."). Because the request was clear enough for the

Department to locate responsive documents from some of its offices without issue, the current impasse cannot be attributed to the alleged lack of specificity in the request.

The government further argues that even if the request is specific enough, it unduly burdens DHS because it would take over a century to process all potentially responsive records. ECF 46-2 at 8–10. On the present record, this contention also fails.

"[W]hen an agency claims that complying with a request is unreasonable, it bears the burden to 'provide a sufficient explanation as to why such a search would be unreasonably burdensome.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (alteration adopted) (quoting *Nation Mag.*, 71 F.3d at 892). That a FOIA request implicates a large quantity of documents is insufficient, on its own, to establish that it is unduly burdensome. *See Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454–55 (D.D.C. 2014) (expressing "skeptic[ism] that a FOIA request may be denied based on sheer volume of records requested" given that "the Act puts no restrictions on the quantity of records that may be sought" and "anticipates requests for voluminous records"), *aff'd*, No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015); *Jud. Watch, Inc. v. U.S. Nat'l Archives & Recs. Admin.*, No. 7-cv-1987, 2008 WL 11516012, at *3 (D.D.C. Sept. 30, 2008) ("[O]therwise valid FOIA requests are not overbroad or unreasonable simply because they seek *a very large number* of documents."). And "even assuming the size of a FOIA request could provide grounds for denial, the burden of demonstrating overbreadth is substantial." *Tereshchuk*, 67 F. Supp. 3d at 455.

The government fails to provide "sufficient explanation as to why [the requested] search would be unreasonably burdensome." *Nation Mag.*, 71 F.3d at 892. In particular, the government provides no good reason why further search term filtering and removal of false positives cannot significantly reduce the burden of the search. The government frames the path forward as an all-

or-nothing stalemate, suggesting that the only possible next step would be for DHS's "FOIA unit

. . . to conduct a preliminary review of all 300,382 pages to locate any records responsive to

[Heritage]'s request" and then engage in multiple rounds of review to determine which individual

pages could be turned over.[1]   ECF 46-3 ¶ 30.   But Heritage persuasively explains that "it is [the

Department]'s failure to reasonably refine its searches, not the nature of Request, that created the

inflated (and speculative) burden that [the Department] now relies on."  ECF 47-1 at 9.  It remains

entirely plausible that "using an eDiscovery tool" can make it unnecessary "to open each email

and its attachments individually" in this case.  *Leopold v. NSA*, 196 F. Supp. 3d 67, 75 (D.D.C.

2016).  Indeed, the government now admits that conducting a supplemental search with connector

search terms reduced the number of potentially responsive records in half.  ECF 46-3 ¶ 28.  And

additional narrowing through methods such as Heritage's suggestion of employing exclusionary

search terms can further reduce the volume of records.  *See* ECF 47-1 at 9.  The Court accordingly

rejects the government's request for judgment in its favor on the ground that the FOIA request did

not reasonably describe the records it sought.

Although Heritage spends the vast majority of its cross-motion addressing the

government's objections to the FOIA request, it also seeks an order that DHS "remove the false

hits, and produce the withheld records with an accompanying *Vaughn* index within 30 days."  ECF

47-1 at 2.  This request, however, is premature at this stage.  Even though the government is wrong

to contend that DHS should not have to turn over any additional records, it would be improper to

---

[1] Although the spreadsheet of potentially responsive records initially flagged 628,277 pages, ECF 47-2 at 2, DHS later conducted a supplemental search using seven connector search term pairs that narrowed that universe to 300,382 potentially responsive pages, ECF 46-3 ¶ 28.  Heritage does not appear to object to this narrowing.  *See, e.g.*, ECF 47-1 at 1 (discussing the "some 600,000 now 300,000 potentially responsive records"); *id.* at 7 (referring to the "contemplated burden of manually reviewing 642 files of some 300,382 pages of (putatively) mostly nonresponsive documents"); *id.* at 10 (discussing the burden of the search even if "the Request entails review of 300,000 documents").

require the government to make such an expansive production in such a short period of time.  The universe of potentially responsive documents remains very large, so it would be in the best interest of all Parties to further narrow the search to remove more false positives before requiring the Department to review every document on a page-by-page basis.  *See id.* at 11 (acknowledging that "reviewing responsive material for FOIA production can take time").  Additionally, that Heritage itself has not always pursued this case in a manner consistent with its requested urgency now counsels against requiring immediate production, *see* ECF 32; ECF 33—even if it is correct to point out that the government should have been more proactive in following the Court's recommendation of further search term refinement to remove false positives, *see* Min. Order of Feb. 11, 2025; Min. Order of Mar. 17, 2025.

Given the foregoing considerations and to facilitate progress in this case, it hereby

**ORDERED** that the government's motion for summary judgment, ECF 46, is **DENIED**; and it is further

**ORDERED** that Heritage's cross-motion for summary judgment, ECF 47, is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that the Department of Homeland Security shall review a new random sample of 1,000 pages from the 300,382 potentially relevant pages and create a spreadsheet that tracks which pages are responsive and which of the seven connector search term pairs used in the most recent search, *see* ECF 46-3 ¶ 28, appear in each of those sample pages; and it is further

**ORDERED** that the Department shall, based on its review of the new random sample, come up with at least five exclusionary search terms that together have the effect of reducing the number of false positive results in the sample by at least 10 percent; and it is further

**ORDERED** that the Department shall provide the spreadsheet containing the responsiveness and frequency of the connector search term pairs data and a report that explains which exclusionary terms were later used to reduce the false positives and summarizes the post-exclusionary-terms responsiveness rate for the sample to Heritage on or before April 30, 2026; and it is further

**ORDERED** that Heritage shall review the spreadsheet and report and propose additional exclusionary search terms and/or other search term modifications that it believes would help further reduce false positives in the sample on or before May 15, 2026; and it is further

**ORDERED** that the Department shall run another search of the sample with Heritage's proposed modifications and provide it with an updated spreadsheet and report on the new responsiveness and frequency of the connector search term pairs data on or before June 14, 2026; and it is further

**ORDERED** that the Parties shall submit a Joint Status Report that details the results of these efforts and proposes next steps on or before July 14, 2026.


Date:  March 16, 2026

_____
CARL J. NICHOLS
United States District Judge